# Illinois Official Reports

## Appellate Court

---

### *People v. Moore*, 2015 IL App (1st) 140051

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DARRYL MOORE, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-14-0051 |
| Filed | December 16, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CR-8583; the Hon. Nicholas R. Ford, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Robert N. Melching, all of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg and Whitney Bond, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE PUCINSKI delivered the judgment of the court, with opinion.<br>Justices Fitzgerald Smith and Lavin concurred in the judgment and opinion. |

**OPINION**

¶ 1     Following a bench trial, defendant Darryl Moore was convicted of two counts of unlawful possession of ammunition by a felon and one count of possession of a controlled substance (cocaine). Defendant was subject to Class X sentencing due to his criminal background, and the trial court sentenced defendant to six years in prison on each count, with those terms to be served concurrently. On appeal, defendant contends the State failed to prove his constructive possession of the contraband beyond a reasonable doubt. Because we agree the State did not establish that defendant had immediate and exclusive control over the area where the contraband was recovered, we reverse defendant's convictions.

¶ 2                                    BACKGROUND

¶ 3     The State charged defendant with two counts of unlawful use or possession of a weapon by a felon for knowingly possessing ammunition in his abode having previously been convicted of a felony. Defendant also was charged with one count of possession of between 1 and 15 grams of a controlled substance (cocaine) with intent to deliver.

¶ 4     At about 8:20 p.m. on April 6, 2013, Chicago police executed a search warrant at 239 West 105th Street in Chicago. A copy of the complaint for the search warrant was not entered into evidence and is not included in the record on appeal. Two police officers who executed the search warrant testified for the State. Chicago police officer Dennis Huberts testified that when the team of officers arrived at 239 West 105th Street, he went to the front of the residence and saw defendant jump out of a window on the side of the house. The window was six or seven feet above the ground and was later determined to be a bathroom window. Defendant fled and was apprehended about six houses away.

¶ 5     Officer Huberts testified he searched "a portion of the basement" and "some part of the living room." He recovered bullets from "a desk or a drawer upstairs in the living room" and recovered .22-caliber ammunition and suspected cocaine from the basement rafters.

¶ 6     The State entered into evidence photographs of the basement stairwell and the basement. When asked if he took any photographs of the rafters from which the ammunition and cocaine were retrieved, Officer Huberts replied, "No, it was kind of hard to get, really dark. It was a really small spot." On cross-examination, Officer Huberts said he did not see defendant handle any of the contraband or discard anything while emerging from the window.

¶ 7     Chicago police officer Jeffrey West testified he searched a bedroom in the residence, which he believed was one of three bedrooms. Officer West testified the bedroom contained men's clothing. He also recovered from a dresser drawer in the bedroom a letter addressed to defendant at 239 West 105th Street, Chicago, Illinois 60628.

¶ 8     On cross-examination, Officer West was asked how many other people were present when the warrant was executed, and he responded, "I can recall about three offhand," including one elderly female and "another individual within the residence." Officer West did not recall seeing other men in the residence and did not see defendant handle the contraband. The letter taken from the dresser in the bedroom had a postmark of October 31, 2012.

¶ 9     The parties stipulated that the packet removed from the rafters tested positive for 2.6 grams of cocaine. The parties further stipulated defendant had a prior felony conviction for possession of a controlled substance with intent to deliver.

¶ 10     At the close of the State's case, the defense moved for a directed finding, asserting no evidence was presented of defendant's exclusive control of the contraband. The court denied that portion of the defense motion but granted the motion as to the count of possession of cocaine with intent to deliver, stating the count would be considered as alleging "straight possession."

¶ 11     The defense presented three witnesses. Tempie Thomas testified she lived at the house with her granddaughter, Veronica Lindsey, and Lindsey's three children. Thomas testified defendant was her great-grandson and did not live at her house on April 6, 2013. Thomas sat in her living room while police searched the house. Defendant was not present.

¶ 12     On cross-examination, Thomas reiterated that defendant did not live with her and "[n]one of my kids live with me. They all come in and out, but nobody lives with me." Contrary to her statement on direct examination, Thomas acknowledged defendant was at the house that day and also said he had received mail there. Thomas denied owning the contraband.

¶ 13     Carla Brown testified she was visiting defendant at Thomas's residence on the day of the search; however, she stated defendant did not live there. When the police arrived to execute the warrant, she was in the bathroom and defendant was outside. While seated in the living room during the search, Brown saw police recover a box of bullets from under a cabinet.

¶ 14     Shaniece Thomas testified she was defendant's sister and that defendant had lived with her family in East Chicago, Indiana, since January 2013. Thomas said defendant left at about 8 a.m. on April 6, 2013, to go to their grandmother's house.

¶ 15     At the close of evidence, the trial court made the following findings:

> "Finding of guilty to straight possession of a controlled substance. Finding of guilty of [unlawful use of a weapon] by a felon. My basis of the finding is his exit–by the way, I believe the officer of what he said completely [*sic*], the defendant jumping out of the bathroom window. I believe that.
>
> Secondly, I believe the defendant's witness that that's where he was residing in the city of Chicago. I believe the piece of mail that he was found, five or six months before the incident, that shows that he did reside at that address.
>
> And I finally want to indicate that in this particular circumstance I would find obviously that the elderly woman that testified that did reside there was the property–the homeowner of that home and that she absolutely had nothing to [do] with this because these drugs were secreted in her home by the man, I think it could be inferentially argued, left from the window of that home upon the entry of the police into that home, the man responsible for the execution of a search warrant on that home, the defendant before me today."

¶ 16     At sentencing, the State offered proof of defendant's four prior felony convictions. Based on his criminal history, defendant was sentenced as a Class X offender to three concurrent terms of six years in prison.

¶ 17     On appeal, defendant contends his convictions should be reversed because the evidence, even when viewed in the light most favorable to the State, did not establish he had knowledge of the presence of the contraband or that he had control over the premises so as to prove his constructive possession.

¶ 18                                     STANDARD OF REVIEW

¶ 19        Where, as here, a defendant challenges the sufficiency of the evidence, a criminal conviction will not be overturned unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt as to the defendant's guilt. *People v. Givens*, 237 Ill. 2d 311, 334 (2010) (citing *People v. Collins*, 106 Ill. 2d 237, 261 (1985)). In such a case, it is not the function of this court to retry the defendant; rather, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* (quoting *People v. Davison*, 233 Ill. 2d 30, 43 (2009), quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

¶ 20        Before applying that legal standard, this court is compelled to note that both defendant and the State make arguments in their briefs that are not based on the evidence presented to the trial court. In assessing the sufficiency of the evidence on appeal, this court is constrained by that evidence and cannot venture outside the record and consider those arguments. See *People v. Benford*, 31 Ill. App. 3d 892, 894 (1975) ("[i]n an appeal, the purpose of review is to evaluate the record of the trial court, and, in general, the review will be limited to what appears in the record").

¶ 21                                              ANALYSIS

¶ 22        With that principle in mind, we consider the evidence pertaining to the convictions in this case. Defendant was convicted of the unlawful use or possession of firearm ammunition by a felon and also was convicted of the possession of cocaine. Thus, the State was required to prove beyond a reasonable doubt that defendant knowingly possessed ammunition and previously had been convicted of a felony. 720 ILCS 5/24-1.1(a) (West 2010). The State also was required to prove beyond a reasonable doubt that defendant had knowledge of the presence of the cocaine and that the cocaine was in his immediate possession or immediate control. 720 ILCS 570/401(c)(2) (West 2010).

¶ 23        Knowing possession may be actual or constructive. *People v. Smith*, 2015 IL App (1st) 132176, ¶ 26. Here, because defendant was not seen in the presence of the recovered contraband, the State was required to show that defendant constructively possessed it. See *People v. Hannah*, 2013 IL App (1st) 111660, ¶ 28. To establish constructive possession, the State must prove defendant had knowledge of the contraband and exercised immediate and exclusive control over the area where the contraband was found. *People v. Maldonado*, 2015 IL App (1st) 131874, ¶ 23. Constructive possession can be demonstrated if the defendant once had physical control over the contraband with intent to exercise control again, the defendant has not abandoned the items, and no other person has obtained possession. *People v. Adams*, 161 Ill. 2d 333, 345 (1994). Constructive possession is typically proved entirely through circumstantial evidence. *Smith*, 2015 IL App (1st) 132176, ¶ 26.

¶ 24        The State relies on the mail and clothing recovered from the bedroom as proof that defendant lived at the house and thus had control of the area for purposes of constructive possession. The State further argues the knowledge element was met by defendant's flight from the house as the officers entered.

¶ 25        We first consider whether the State presented sufficient proof of defendant's knowledge of the contraband. Knowledge is rarely proven by direct evidence, but may be shown by evidence of the defendant's acts, statements or conduct from which a fact finder may infer

- 4 -

the defendant knew of the presence of the prohibited items. *Id.*; *Maldonado*, 2015 IL App (1st) 131874, ¶ 40. Here, the police observed defendant leaving the house through a bathroom window and found mail addressed to defendant in a bedroom, along with male clothing. However, the contraband was not recovered from that area. Upon searching the house, ammunition was recovered from inside a desk or cabinet drawer in the living room and ammunition and drugs were found in a relatively hidden area in the basement rafters.

¶ 26     In finding defendant knowingly possessed those items, the trial court relied on the fact that defendant was seen fleeing from the residence when police arrived. Evidence of flight is admissible as tending to demonstrate a defendant's consciousness of guilt. *People v. Harris*, 52 Ill. 2d 558, 561 (1972). Still, the fact of flight is to be considered "in connection with all other evidence in a case." *People v. Lewis*, 165 Ill. 2d 305, 349 (1995). The inference of guilt which may be drawn from flight depends upon the knowledge of the suspect that the offense has been committed and that he is or may be suspected. *Id*. The trial court here cited defendant's flight in finding the evidence sufficient to establish his guilt.

¶ 27     However, in addition to knowledge, the State also had to prove that defendant exercised immediate and exclusive control over the area where the contraband was found. See *Maldonado*, 2015 IL App (1st) 131874, ¶ 23. Even where a defendant is first observed fleeing from a location where narcotics are found, that fact is not sufficient to prove constructive possession, absent any further indicia of knowledge or control. *In re K.A.*, 291 Ill. App. 3d 1, 7-9 (1997). A defendant's residency at the location where contraband is recovered has been found to constitute sufficient evidence of control so as to establish constructive possession. *Maldonado*, 2015 IL App (1st) 131874, ¶ 29. " ' "Proof of residency in the form of rent receipts, utility bills and clothing in closets is relevant to show the defendant lived on the premises and therefore controlled them." ' " *People v. Spencer*, 2012 IL App (1st) 102094, ¶ 17 (quoting *People v. Cunningham*, 309 Ill. App. 3d 824, 828 (1999), quoting *People v. Lawton*, 253 Ill. App. 3d 144, 147 (1993)).

¶ 28     The State's evidence, even taken in its most favorable light, did not establish that defendant lived at 239 West 105th Street. The State presented a piece of mail addressed to defendant and postmarked more than six months earlier. That item was found in a bedroom that also contained male clothing but that clothing was not specifically linked to defendant. No other evidence connected defendant to the residence. In contrast, defendant presented three witnesses who testified he did not live at the house. Moreover, defendant's great-grandmother testified her young relatives "all come in and out" of the house. Thus, the evidence in this case did not establish defendant's immediate and exclusive control over the premises.

¶ 29     In *People v. Ray*, 232 Ill. App. 3d 459, 460-61 (1992), which defendant cites in his brief, the defendants' convictions were reversed in the face of stronger evidence of constructive possession than was presented here. In *Ray*, police recovered cocaine, cash and drug paraphernalia from the apartment living room where the three defendants were sitting. Despite the defendants' seated positions within a few feet of the contraband, the appellate court reversed their convictions for cocaine possession, noting the only evidence connecting them to the apartment was a six-month-old cable TV bill in the name of one defendant. *Id*. at 461-63. Here, as in *Ray*, the single piece of mail addressed to defendant dated six months prior, and male clothing in a bedroom, were the only items tying defendant to the residence. The contraband here was not in the presence of defendant.

¶ 30 The State contends the facts here are comparable to those in *Spencer*, 2012 IL App (1st) 102094, which also involved the defendant's flight during the execution of a search warrant. In *Spencer*, this court found the evidence at the defendant's bench trial was sufficient to show that the defendant constructively possessed a firearm and ammunition based on items that established the defendant's residency in the searched house. *Id*. ¶ 18. When police entered the house to perform the search, the defendant fled and was apprehended in the backyard. *Id*. ¶ 3. The officers recovered a .357-caliber revolver and ammunition from the top of a kitchen cabinet. *Id*. ¶ 5. The items recovered from a bedroom included three rounds of .357-caliber ammunition, an Illinois identification card bearing the defendant's name and listing the searched house as his residence, a set of keys that operated the house's exterior doors, two photographs of the defendant, men's clothing, a four-month-old letter from the Cook County probation department mailed to the defendant at the address of the searched house, and $9,000 in cash. *Id*. ¶ 4. After the ammunition and cash were recovered, the defendant "made a statement to the effect that he needed to have a gun because of the amount of money that he had." *Id*. ¶ 18.

¶ 31 Affirming the defendant's conviction on appeal, this court held in *Spencer* that proof of the defendant's residency and his statements to police connected the defendant to the gun recovered from the kitchen. *Id*. This court further noted the defendant's flight from the house as evidence of his consciousness of guilt. *Id*. Viewing all of that evidence in the light most favorable to the State, this court held that a rational trier of fact could have found the defendant constructively possessed the revolver and ammunition recovered in the search. *Id*.

¶ 32 Several points distinguish *Spencer* from the case at bar. First, the items recovered in the house in *Spencer* were far more comprehensive than the personal effects here. In contrast to the male clothing and a single piece of correspondence recovered by police in this case, the officers in *Spencer* found an identification card showing defendant lived at the subject address, a set of keys to the residence, and photographs of the defendant. *Id*. ¶ 4. Second, some of the ammunition in *Spencer* was recovered from the bedroom in which the defendant's personal effects also were found. Here, police found the contraband in other areas of the house. Third, the defendant in *Spencer* admitted his knowledge of a weapon in the house. In this case, defendant made no such admission. Although the trial court in *Spencer* noted the defendant's flight from the house as evidence of his consciousness of guilt, as did the trial court here, the facts supporting knowledge of the contraband and control over the area where the contraband was found were far stronger in *Spencer* than in the case before us.

¶ 33 Even when viewed in the light most favorable to the prosecution, the evidence presented to the trial court does not support a finding that defendant committed the essential elements of the crime beyond a reasonable doubt. Although defendant was seen fleeing from 239 West 105th Street when police arrived, the State did not prove that defendant exercised immediate control over the area where the illegal items were found.

¶ 34                                    CONCLUSION

¶ 35 Accordingly, defendant's convictions for unlawful possession of ammunition by a felon and possession of a controlled substance (cocaine) are reversed. Given that disposition, we need not address defendant's contention on appeal relating to the correction of the mittimus.

¶ 36          Reversed.