2020 IL App (1st) 181219-U
No. 1-18-1219
Order filed November 30, 2020

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 5471 |
| | ) | |
| BRYAN DANIEL, | ) | Honorable |
| | ) | Thaddeus L. Wilson, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HYMAN delivered the judgment of the court.
Presiding Justice Walker and Justice Pierce concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm defendant's convictions for possession of a controlled substance, unlawful use of weapon by a felon, and possession of cannabis over his contention that the evidence was insufficient to prove his guilt beyond a reasonable doubt.

¶ 2    Bryan Daniel was found guilty of possession of a controlled substance, two counts of unlawful use of weapon by a felon (UUWF), possession of a firearm with a defaced serial number, possession of a firearm without a valid firearm owner's identification (FOID) card), and possession of cannabis. The trial court merged the counts and sentenced him to concurrent terms of two years' imprisonment for possession of a controlled substance, four years' imprisonment for UUWF, and

364 days in the Cook County Department of Corrections for possession of cannabis. Daniel appeals, contending the State failed to prove his guilt beyond a reasonable doubt.

¶ 3    We affirm. After viewing the evidence in the light most favorable to the State and drawing all reasonable inferences in its favor, we hold the State presented sufficient evidence to find Daniel had both knowledge of the presence of the contraband and exercised immediate and exclusive control over the room in which it was found.

¶ 4                                Background

¶ 5    The State indicted Daniel for, among other charges, possession of more than 1 but less than 15 grams of cocaine with intent to deliver (720 ILCS 570/401(c)(2) (West 2016)), two counts of UUWF, possession of a firearm with defaced identification marks, possession of a firearm without a valid FOID card, and possession of more than 30 but less than 500 grams of cannabis with intent to deliver (720 ILCS 550/5(d) (West 2016)). (Daniel's name is spelled "Bryant Daniel" in the charging instrument but the record makes clear his first name is spelled "Bryan.") The matter proceeded to a bench trial.

¶ 6    Agent Tina Williams testified that she was a parole agent for the Illinois Department of Corrections. Around 8:25 a.m. on February 23, 2017, she, her partner, and other law enforcement officers conducted a parole compliance check for Daniel at the two-bedroom apartment in which Daniel was residing under his parole agreement. Williams knocked on the door, and Daniel answered. Williams told Daniel they were performing a parole compliance check, and Daniel let them inside. Only Daniel and his girlfriend, Taqueria Lewis, were present. Williams asked to search Daniel's bedroom, and he directed her to "the first door *** on the left."

¶ 7    Williams entered the room and found women's clothing, a purse belonging to Daniel's parole host Denise Rule, pieces of mail addressed to Rule, and no men's clothing. Williams then went to the second bedroom, where she encountered Daniel's girlfriend, Taqueria Lewis, who was not dressed. Lewis told Williams that she and Daniel lived in the bedroom. Williams told Lewis to get dressed and asked where her clothing was. Lewis directed her to a laundry bag in the closet in the same bedroom, and Williams gave her some clothing. Lewis got dressed and left the room.

¶ 8    Williams searched the second bedroom and found bags of what she suspected was marijuana and cocaine on a television stand next to Daniel's wallet, which contained his identification and voter registration cards. Her partner found a handgun under men's clothing and candy on a chair next to the closet. The agents also discovered a scale in a laundry bag inside the closet, the box associated with Daniel's ankle monitor on the windowsill next to the bed, and "some kind of paper *** with [Lewis's] name on it."

¶ 9    On cross-examination, Williams testified that, when Daniel answered the door, he was wearing shorts and was "not completely" dressed. She never saw Daniel in the room where the contraband was found. Williams denied that Daniel asked her for permission to give a Link card from his pocket to Lewis. She denied seeing Daniel take something out of his pocket and hand it to Lewis. Williams denied seeing an air mattress or any other indication that someone was sleeping or residing in the living room. When asked whether she "[found] out that the host had a 15-year-old son that was also living there," Williams replied, "No."

¶ 10    Two photographs of the contraband next to Daniel's wallet were taken inside the bedroom and a third was taken in the kitchen. A Chicago police officer who assisted with the compliance check moved the contraband to a chair in the room before the photographs were taken. No pictures

were taken of the box associated with Daniel's ankle monitor. The photographs were later admitted into evidence. Our review of the photographs shows that there was an ashtray containing cigarette butts on the floor next to the chair on which the contraband was placed.

¶ 11    Officer Walenty Byk testified that he assisted with the parole compliance check. He did not participate in the search but inventoried the marijuana, crack cocaine, "[l]ittle plastic ziplock bags," scale, wallet, and firearm. He sent the inventoried items to the Illinois State Police Crime Lab for testing.

¶ 12    On cross-examination, Byk testified that he was not present when the items were found. Byk saw an electronic monitoring box in one of the bedrooms. He did not see any evidence of drug dealing and did not see Daniel give anything to the woman before he was taken away.

¶ 13    Sergeant Kenneth Krok, who is assigned to the Chicago police department Forensics Firearms Lab, examined the firearm found in the bedroom and determined it was capable of being fired. He also determined a broad-tipped tool had been used to obliterate the serial number.

¶ 14    The parties stipulated that Daniel had not been issued a valid FOID card. The parties also stipulated that a forensic chemist examined three of the bags containing suspect cannabis and determined they contained a total of 30.4 grams of cannabis. She also examined 11 bags containing suspect cocaine and determined they contained 1.1 grams of cocaine.

¶ 15    The State also entered a certified copy of Daniel's 2016 conviction for aggravated unlawful use of weapon. Daniel moved for a directed finding, which the court denied.

¶ 16    J.B., who was 16 years old at the time of trial, testified he lived in the apartment with Rule, who was his mother, and Daniel, who was Lewis's boyfriend. The apartment had two bedrooms, one of which was occupied by Rule and the other by him.

¶ 17 Around 8 or 9 p.m. on February 22, 2017, J.B. saw someone place a book bag behind a garbage can in the alley behind his residence. He went out to retrieve the book bag and brought it inside. Inside the book bag were marijuana, cocaine, a loaded handgun, and a scale. He took the drugs out of the book bag and placed them on the TV stand in his room and placed the book bag with the handgun on a chair.

¶ 18 Around 7 or 8 a.m. the next day, he left the apartment to go to school. He brought with him some of the marijuana, left the book bag containing the loaded handgun on the chair and the remainder of the drugs on the TV stand, and locked his bedroom door. Daniel and Lewis were sleeping on the couch in the living room. Daniel did not leave his ID card, wallet, or any other belongings in J.B.'s bedroom. The box associated with Daniel's ankle monitor was in the living room when J.B. left for school. J.B. neither told Daniel about nor showed him the contraband he brought inside.

¶ 19 Daniel testified he lived with Rule and Bowman because Lewis lived in public housing and could not have a parolee living with her. Daniel did not sleep or keep his belongings in either of the bedrooms. He slept on an air mattress in the living room. At the time, the box associated with his ankle monitor was in the living room. He did not have a gun or drugs in the apartment, and he did not know what J.B. kept in his bedroom.

¶ 20 Around 8:30 a.m., Daniel and Lewis were asleep on an air mattress in the living room when the parole officers knocked on the door. His pants were next to him and contained his wallet, ID card, link card, and voter registration card. He "jumped up to answer the door" and put on his pants. The officers informed him they were performing a compliance check and search of the home and asked him whether he had anything illegal inside the home. Daniel stated he did not and

allowed them inside to search the home. The officers entered, grabbed him, and "put [him] on the wall."

¶ 21    The officers woke up Lewis, who was sleeping naked in the living room. A woman parole officer directed Lewis to pick up her clothing, which she kept in the living room, and go to J.B.'s bedroom to get dressed. Though the door was closed and locked, the parole agent "jimmied the door *** open." The parole agent opened the door, announced there was a gun, and "everything got hysterical." The officers grabbed Daniel and Lewis and handcuffed them to chairs. Daniel told the officers the room belonged to J.B. and, according to Daniel, the officers "found a lot of things that had [J.B.'s] name on it but they didn't bring them out." The officers never found any papers with Daniel's name on them in the room.

¶ 22    Daniel denied that his wallet was on a nightstand in the room. Rather, it remained in his pocket until the officers emptied his pockets and placed their contents on a table. Lewis took Daniel's Link card out of the wallet, and the officers took the wallet and, according to Daniel, put it "with all the other stuff."

¶ 23    On cross-examination, Daniel identified his parole agreement, which was later admitted into evidence, and acknowledged it prohibited him from possessing firearms or dangerous weapons. He admitted that the State's photographic evidence depicted his wallet and voter registration card on a chair in J.B.'s room. Daniel testified he smoked cigarettes and did not know whether J.B. did also.

¶ 24    In rebuttal, the State called J.B., who testified the chair in the State's photographs was in his room and that he did not smoke cigarettes. The State also called Officer Nick Argyropoulos, who testified he participated in the compliance check and saw no one pry open a bedroom door.

¶ 25    The trial court found Daniel guilty of possession of a controlled substance, two counts of UUWF, possession of a firearm with a defaced serial number, possession of a firearm without a valid FOID card, and possession of cannabis. In doing so, the court found the room in which the contraband was found was "identified as [Daniel's] room" and contained his wallet, ID card, voter registration card, men's clothing, and the box associated with Daniel's ankle monitor. Further, the court stated it "did not believe anything that [J.B.] testified to, other than the fact he doesn't smoke" and "did not find the testimony of [Daniel] credible."

¶ 26    Daniel filed a posttrial motion, which the trial court denied. The court merged the counts and sentenced Daniel to two years' imprisonment for possession of a controlled substance, four years' imprisonment for UUWF, and 364 days in the Cook County Jail for the possession of cannabis charge, with all terms to be served concurrently.

¶ 27                                  Analysis

¶ 28    Daniel contends the State failed to prove he constructively possessed the cocaine, marijuana, and firearm that were found by the parole agents in the bedroom.

¶ 29    When a defendant presents a challenge to the sufficiency of the State's evidence, "a reviewing court must determine whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Internal quotation marks omitted; emphasis in original.) *People v. Ross*, 229 Ill. 2d 255, 272 (2008). The reviewing court does not retry the defendant, and "the trier of fact remains responsible for making determinations regarding the credibility of witnesses, the weight to be given their testimony, and the reasonable inferences to be drawn from the evidence." *Id.* That the trier of fact accepted certain testimony or made certain inferences based on the

evidence does not guarantee the reasonableness of the decision. *Id.* But, the trier of fact need not disregard inferences which normally flow from the evidence or search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt. *People v. Wheeler*, 226 Ill. 2d 92, 117 (2007). "A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory it creates a reasonable doubt of the defendant's guilt." *People v. Collins*, 106 Ill. 2d 237, 261 (1985).

¶ 30    Constructive possession exists where the defendant (1) had knowledge of the presence of the contraband, and (2) exercised immediate and exclusive control over the area where it was found. *People v. Hannah*, 2013 IL App (1st) 111660, ¶ 28. The State may prove knowledge with evidence of a defendant's acts, declarations, or conduct from which it can be inferred he or she knew the contraband existed in the place where it was found. *People v. Spencer*, 2012 IL App (1st) 102094, ¶ 17. "Control is established when a person has the 'intent and capability to maintain control and dominion' over an item even if he lacks personal present dominion over it." *Id.* (quoting *People v. Frieberg*, 147 Ill. 2d 326, 361 (1992). "Habitation in the premises where contraband is discovered is sufficient evidence of control to constitute constructive possession." *Spencer*, 2012 IL App (1st) 102094, ¶ 17.

¶ 31    Viewing the evidence in the light most favorable to the State and drawing all reasonable inferences in its favor, we find the State presented sufficient evidence to permit the trial court to find Daniel had both knowledge of the presence of the contraband and exercised immediate and exclusive control over the bedroom in which it was found.

¶ 32    The testimony of the State's witnesses established that Daniel lived in the apartment under his parole agreement. Agent Williams and a team of other officers carried out a parole

compliance check. When they arrived, Daniel answered the door partially dressed. Williams asked Daniel to search his bedroom, and he directed her to the bedroom in which the officers found only women's clothing, no men's clothing, and personal items belonging to Rule. Williams then went to the second bedroom, where she encountered Lewis, who was naked. Lewis told Williams the room belonged to her and Daniel. Lewis directed Williams to the closet to get her clothes so she could get dressed. During the search of that second bedroom, Williams and her partner recovered from the TV stand Daniel's wallet, which contained his ID and voter registration cards. Several bags of cocaine and marijuana sat next to Daniel's wallet. On a chair, under items of men's clothing, the officers saw a loaded handgun. They also saw the box associated with Daniel's ankle monitor on a windowsill next to the bed.

¶ 33    Additionally, the evidence showed Daniel smoked, and J.B. did not, and the photographs taken in the bedroom depict an ashtray containing cigarette butts. Based on this evidence, the trial court could reasonably find Daniel constructively possessed the contraband. See *Spencer*, 2012 IL App (1st) 102094, ¶ 17 ("Knowledge may be shown by evidence of a defendant's acts, declarations, or conduct from which it can be inferred that he knew the contraband existed in the place where it was found.").

¶ 34    Daniel nevertheless argues the State's evidence establishing his constructive possession of the contraband was unconvincing. He notes that the State failed to present any evidence, such as a photograph, corroborating the testimony that the box associated with Daniel's ankle monitor and his wallet were found inside the bedroom. He also notes a "discrepancy" exists with respect to where the contraband was found—the TV stand—and where it was photographed—the chair—and maintains Williams's explanation for the discrepancy was inconsistent. But, "[t]he

testimony of a single witness is sufficient to convict if the testimony is positive and credible, even where it is contradicted by the defendant." *People v. Gray*, 2017 IL 120958, ¶ 36. Minor inconsistencies in the evidence do not automatically create a reasonable doubt of guilt. *People v. Corral*, 2019 IL App (1st) 171501, ¶ 85. The trial court found credible the State's evidence that both the ankle monitor box and Daniel's wallet were in the room with the contraband and rejected as not credible Daniel's contrary evidence. We may not disturb those findings. *Ross*, 229 Ill. 2d at 272. The State's failure to corroborate this testimony is of no consequence.

¶ 35    Daniel also maintains that neither his presence in the apartment nor the presence of his personal property in the bedroom supports a finding of constructive possession. In support, Daniel relies on *People v. Tates*, 2016 IL App (1st) 140619, *People v. Moore*, 2015 IL App (1st) 140051, *People v. Wright*, 2013 IL App (1st) 111803, *People v. Ray*, 232 Ill. App. 3d 459 (1992), *People v. Terrell*, 2017 IL App (1st) 142726, and *People v. Fernandez*, 2016 IL App (1st) 141667. Each case is distinguishable.

¶ 36    In *Tates*, *Moore*, *Wright*, and *Ray*, the State did not present evidence that the defendants lived in the premises where the contraband was found. *Tates*, 2016 IL App (1st) 140619, ¶ 30; *Moore*, 2015 IL App (1st) 140051, ¶ 28; *Wright*, 2013 IL App (1st) 111803, ¶ 26; *Ray*, 232 Ill. App. 3d at 462. In *Moore*, the only evidence specifically linking the defendant to the house was a piece of mail addressed to defendant that was postmarked six months earlier. *Moore*, 2015 IL App (1st) 140051, ¶ 28. And, in *Terrell* and *Fernandez*, the State failed to present evidence that the defendants were ever inside the premises where the contraband was found. *Terrell*, 2017 IL App (1st) 142726, ¶ 31; *Fernandez*, 2016 IL App (1st) 141667, ¶ 22.

¶ 37    The parties do not dispute Daniel lived and was present in the apartment when the contraband was found. And, multiple items, including Daniel's wallet and the box associated with his ankle monitor, link Daniel to the bedroom. Additionally, the State presented evidence that Lewis kept her clothing in the closet and also told Williams that she and Daniel lived in the bedroom. Even if, as Daniel argues, Lewis's statement to Williams was hearsay, Daniel failed to object at trial and the trial court was permitted to consider the testimony and give it its natural probative effect. *People v. Akis*, 63 Ill. 2d 296, 299 (1976).

¶ 38    Daniel next argues his lack of flight and the absence of evidence showing he attempted to conceal the contraband supports an inference that he had no knowledge of the contraband's presence. While true, it does not necessarily follow that his lack of flight establishes he lacked knowledge of its presence. *People v. Murphy*, 2017 IL App (1st) 142092, ¶ 13. Daniel's argument overlooks that he was untruthful with Williams when she asked to search his bedroom and he directed her to Rule's bedroom. Daniel's dishonesty permitted an inference that he knew of the presence of the contraband in the other bedroom. See *Spencer*, 2012 IL App (1st) 102094, ¶ 17.

¶ 39    Finally, Daniel argues the photographs depicting the cigarette butts in the ashtray in J.B.'s room did not conclusively establish that he resided in the room, even though J.B. testified he was a non-smoker. According to Daniel, the cigarette butts could have been deposited by Rule or a social guest of J.B's. Based on Daniel's testimony that he smoked cigarettes and J.B.'s testimony he did not, the trial court could reasonably conclude Daniel deposited the butts and resided in the room. The trial court was not required to speculate as to who else could have deposited them and raise speculation to a level of reasonable doubt. See *Wheeler*, 226 Ill. 2d at 117.

¶ 40    Affirmed.