**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 200244-U

Order filed November 21, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | Appeal No. 3-20-0244 Circuit No. 18-CF-622 |
| JACKIE NUNN JR., | ) ) | Honorable Kathy S. Bradshaw Elliott, |
| Defendant-Appellant. | ) | Judge, Presiding |

_____

PRESIDING JUSTICE O'BRIEN delivered the judgment of the court.
Justices Holdridge and Hettel concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:   State did not prove defendant possessed controlled substance with intent to deliver; conviction reduced to possession of a controlled substance and cause remanded for resentencing.

¶ 2    Defendant was convicted of unlawful possession of a controlled substance with the intent to deliver and unlawful possession of a controlled substance. The trial court merged the possession charge with the intent to deliver charge and sentenced defendant to a four-year term of imprisonment. He appeals his convictions. We reduce his conviction for unlawful possession of a

controlled substance with intent to deliver to unlawful possession of a controlled substance and remand for resentencing.

¶ 3                                            I. BACKGROUND

¶ 4       Defendant Jackie Nunn Jr. was arrested after police officers saw him in a parking lot at a housing project in Kankakee. He was charged with possession of a controlled substance with intent to deliver (720 ILCS 570/401(c)(2) (West 2018)) (count I) and unlawful possession of a controlled substance (*id.* § 402(c)) (count II). Count I alleged that defendant possessed between 1 and 15 grams of cocaine with intent to deliver. Count II alleged that defendant possessed less than 15 grams of cocaine.

¶ 5       A jury trial took place. Kankakee police officer Brad Latham testified for the State. He was involved in the tactical unit which dealt with narcotics investigations and suppression and gun crimes, including participation by law enforcement officers and confidential informants in "actively purchasing drugs off of the streets." He had been involved in investigating more than 20 purchases. His narcotics training including Drug Enforcement Agency (DEA) training, courses in street interviews, and narcotics identification classes. He was on patrol on October 17, 2018, around 6:40 p.m. near the housing projects with his partner, Thomas Martin, who was driving a Dodge Charger with a spotlight, inside emergency lights and municipal license plates. The vehicle was an unmarked police car but Latham was in police uniform. The police department had an agreement with the city and the housing authority that the police would enforce the rule that only residents could be on housing project property and the police would ask nonresidents to leave the premises. If the person returned after being told to leave, the police would arrest them. The role of the police in monitoring the housing project was known in the community.

¶ 6    Latham noticed defendant and James Williams Jr., standing on housing project property near the parking lot. He knew defendant did not live in the housing projects. He did not see the men engaged in any transactions and did not see defendant holding anything. Martin pulled into the parking lot and they attempted to make contact with defendant and Williams. Defendant began walking across the parking lot and passed in front of the officers' vehicle. Defendant began to run when Latham exited the vehicle. Latham pursued him. When defendant rounded the front of a car in the parking lot, "he's leaning down with his left arm and shoulder in a release—you know, in a releasing movement, to drop something, put something down, something of that nature; completely, you know, goes downward." Latham saw something fall out of defendant's hands. At that time, it was dark outside and Latham's ability to see was diminished.

¶ 7    Defendant continued to run and Latham caught up to him a half block away and arrested him. Latham found a cell phone and $746 in cash when he searched defendant. Based on his training and on-the-job experience, Latham was familiar with items commonly used to consume cocaine. Defendant did not have on his person a crack pipe, needle, spoons with burn marks, lighters, hollow metal or glass items with steel wool-type filters or other items Latham knew to be common for cocaine use. Latham immediately returned to the parking lot area where he saw defendant drop something. No one else was in the area. Under the front bumper of the vehicle defendant had rounded, he found two clear plastic bags that contained a white, rock-like substance, which he knew to be crack cocaine. He photographed the bags before he removed them from under the car and secured them as evidence. The photographs demonstrated the two bags were located about two feet apart.

¶ 8    On cross-examination, Latham acknowledged that drug users do not always have paraphernalia on them. He did not know whether defendant was a drug addict. It was not illegal to

carry money and he was unaware of the source of the $746 found on defendant. It could have been lottery winnings or defendant's cashed paycheck. It was dark outside when the events occurred. Latham agreed defendant could have been running because he was on housing project property and was not a resident. He was not aware of Williams's actions while Latham chased defendant. He did not ask Williams if he bought drugs from or sold drugs to defendant. Williams was not arrested. Latham did not find any other contraband under the vehicle but he did not look for any nonillegal items. There could have been rocks, sticks and bottles under the car and Latham agreed defendant could have dropped any sort of item. He did not submit the recovered bags for DNA or fingerprint testing.

¶ 9    Martin testified in accord with Latham regarding their patrol, coming upon defendant and Williams in the parking lot, and the agreement to arrest nonresidents. He was aware neither defendant nor Williams were residents of the housing project. He did not observe anything in defendant's hands or see him and Williams engage in any transactions. Defendant walked in front of the police vehicle "[a]t an aggressive pace." After defendant began to run, Martin told Williams to remain where he was and he joined the chase after defendant. He caught up to Latham after defendant was handcuffed. On cross-examination, Martin said he was unaware of Williams's actions during the foot chase but Martin saw Williams walk up the sidewalk to where they were standing with defendant after his arrest. He did not know if Williams had drugs, guns, large amounts of cash, or a spoon, needle or pipe for cocaine use on his person. Martin did not question or arrest Williams. He did not see anything in defendant's hands or see him throw anything. He was unaware why defendant ran.

¶ 10     The parties stipulated that Kankakee police officer Scott Monferdini transported the two bags of evidence to the Illinois State Police (ISP) Crime Lab for forensic testing and returned the items to the Kankakee Police Department evidence vault when testing was completed.

¶ 11     Cynthia Koulis, a forensic scientist with the ISP, testified as an expert in forensic science in the field of cannabis and controlled substances. She identified State's exhibit No. 1 as 31 bags containing an off-white, rock-like substance and State's exhibit No. 2 as 17 bags with the same substance. She analyzed and weighed 20 bags from exhibit No. 1 but did not do any further analysis because the 20 bags weighed 1.3 grams, which was the weight needed for the charged offense. The substance in the 20 bags tested positive for the presence of cocaine. On cross-examination, Koulis said she did not analyze or weigh the other bags in exhibit No. 1 or any bags in exhibit No. 2. She did not perform any purity tests and was unaware if other substances were in the samples. No DNA or fingerprint testing had been requested, although the ISP had the ability to do so.

¶ 12     The State rested and defendant moved for a directed verdict, which the trial court denied. The defense rested. Following closing arguments, the jury engaged in deliberations, during which it submitted three questions to the trial court. The questions were:

     (1) "Where is the sidewalk that the car is parked on?"

     (2) "Did Williams walk on the sidewalk and walk past the car where the baggies were found?"

     (3) "Is there a diagram of the path both Nunn and Williams took in comparison to the location of the baggies and the car?"

¶ 13     The trial court provided the following answer to the questions: "You have heard the evidence and been instructed as to the applicable law. No other answer can be given to your inquiry."

¶ 14        The jury ultimately found defendant guilty of unlawful possession of a controlled substance with intent to deliver and unlawful possession of a controlled substance. Defendant moved for a new trial, which the court denied. The trial court merged the unlawful possession of a controlled substance count into the unlawful possession of a controlled substance with intent to deliver count and sentenced defendant to a four-year term of imprisonment. After his motion to reconsider his sentence, defendant timely appealed.

¶ 15                                    II. ANALYSIS

¶ 16        The issue on appeal is whether the State proved defendant guilty beyond a reasonable doubt of unlawful possession of a controlled substance with intent to deliver. Defendant argues that the State failed to prove he possessed the cocaine found in the parking lot, and further failed to prove that the possession was not for personal use but intended for delivery. He points to the fact that neither Latham nor Martin saw him holding any drugs or engaging in a drug transaction. Latham did not see the item that he testified he saw defendant drop near the car in the parking lot during the foot pursuit. In the alternative, defendant points to the testimony that the cocaine amounted to 1.3 grams as support that it was for personal use and the State failed to prove intent to deliver.

¶ 17        Defendant was convicted of unlawful possession of a controlled substance with intent to deliver 1 gram or more but less than 15 grams of a substance containing cocaine and unlawful possession of a controlled substance. 720 ILCS 570/401(c)(2), 402 (West 2018). Possession may be actual or constructive; to prove constructive possession, the State must establish beyond a reasonable doubt that "defendant had knowledge of the presence of the contraband and exercised 'immediate and exclusive' control over the area where the contraband was discovered." *People v. Terrell*, 2017 IL App (1st) 142726, ¶ 18 (quoting *People v. Tates*, 2016 IL App (1st) 140619, ¶ 19). To establish possession with intent to deliver, the State must establish beyond a reasonable doubt

6

that defendant knew of the drugs, they were in his immediate possession or control and he intended to deliver them. *People v. Robinson*, 167 Ill. 2d 397, 407 (1995).

¶ 18        Knowledge may be demonstrated with evidence of the defendant's acts, declarations or conduct from which it can be fairly inferred that he knew the drugs existed where they were found. *People v. Maldonado*, 2015 IL App (1st) 131874, ¶ 40. Possession may be proven even where possession is joint or where other people have access to the area where the drugs were found. *Id.* ¶ 43. To determine whether possession is with the intent to deliver, the court considers the following factors as probative of intent: the quantity of drugs and whether it is too large for personal consumption; high purity of the drugs; weapon possession; possession of police scanners, beepers or cell phones; possession of large amounts of cash; possession of drug paraphernalia; and the manner in which the drugs are packaged. *Robinson*, 167 Ill. 2d at 408.

¶ 19        Defendant asserts that the State did not establish that he possessed the cocaine recovered from the parking lot. In support of his assertion, defendant points to the following: neither officer saw him engaged in a transaction with Williams, they did not identify that he had something in his hands, they did not see what he threw under the vehicle, and Williams's presence was unaccounted for during the foot pursuit and defendant's arrest. Contrary to defendant's assertion, the State proved constructive possession. Defendant attempted to avoid the officers as they pulled into the parking lot, walking aggressively in front of their vehicle before beginning to run away from Latham as he exited the unmarked police car. See *People v. Moore*, 2015 IL App (1st) 140051, ¶ 26 (evidence of flight tends to demonstrate defendant's consciousness of guilt). While defendant submits it is also feasible that he ran from the police to avoid being arrested for trespassing on housing project property, it is also a reasonable inference that he ran because he was holding cocaine. This inference is supported by him tossing an item later discovered to be cocaine.

7

Moreover, he never offered any evidence that he did not live in the housing project and thus fled as a trespasser. *Id.* ("The inference of guilt which may be drawn from flight depends upon the knowledge of the suspect that the offense has been committed and that he is or may be suspected.").

¶ 20    Defendant relies on *People v. Boswell*, 19 Ill. App. 3d 619 (1974) as support for his claim that the State failed to prove possession due to evidentiary gaps. *Boswell* is distinguished. In that case, an officer in a squad car saw a bag thrown from the front passenger side of a vehicle he was pursuing. *Id.* at 620. The package was recovered and determined to contain cannabis. *Id.* at 621. The reviewing court reversed the defendant's conviction for cannabis possession, finding the State did not prove possession. *Id.* at 622. The court rejected the assumption that the defendant possessed the cannabis on account of it being tossed from the front passenger seat of the vehicle where the defendant was seated because other individuals were also in the vehicle and could have tossed the drugs, noting speculation and conjecture were insufficient to sustain the conviction. *Id.* Contrary to the circumstances in *Boswell*, defendant was the only person who Latham identified as tossing the bags of cocaine.

¶ 21    Latham testified that he saw defendant lean down and release something as he turned in front of a parked car during the foot pursuit. Latham could not identify the item defendant released. However, immediately after catching and arresting defendant, Latham returned to the area of the parking lot where he saw defendant toss something and discovered the two bags of cocaine. According to Latham, the time he chased defendant after the toss, through the arrest and including Latham's return to the parking lot was under a minute. No one else was in the parking lot. Although Williams was also in the parking lot initially, he was on the other side from where the drugs were found and apparently travelled alongside the parking lot to the site of defendant's arrest rather than following defendant's path through the parking lot. According to Martin, Williams had followed

8

the pursuit by walking up the sidewalk parallel to defendant's route, ending up in the area defendant was arrested. Unlike *Boswell*, defendant was the only person seen tossing an item in the area where two bags of cocaine were shortly thereafter discovered.

¶ 22 Defendant's flight, his attempt to hide the cocaine, the lack of other persons in the parking lot and the immediacy of Latham's discovery of the cocaine after witnessing defendant "release" something establish defendant's constructive possession of the cocaine. The State did not fail to prove him guilty of possession.

¶ 23 The State did, however, fail to establish that defendant possessed the cocaine with an intent to deliver. The only factors in support of an intent to deliver that the State proved were quantity and packaging. Yet, the State did not present any evidence connecting either the quantity of cocaine or its packaging with an intent to deliver. The State did not offer any evidence regarding what amount would be considered reasonable for personal use and whether the quantity in defendant's possession exceeded that amount. Neither Latham nor Martin testified as to what is considered an amount for personal consumption. *People v. Ellison*, 2013 IL App (1st) 101261, ¶ 15 (evidence insufficient to sustain conviction for possession with intent to deliver where State did not present testimony regarding whether amount of seized contraband exceeded amount reasonable for personal use). Here, the tested cocaine weighed 1.3 grams, an amount found consistent with personal use in other cases. See *Robinson*, 167 Ill. 2d at 413 (2.2 grams of PCP and 2.8 grams of cocaine may be consistent with personal use).

¶ 24 In *Ellison*, 2013 IL App (1st) 101261, ¶¶ 21-22, the reviewing court found that 3.12 grams of cocaine and 0.04 grams of heroin were not inconsistent with personal use. The court rejected the State's argument that the quantity of contraband, along with the lack of drug paraphernalia on the defendant, established an intent to deliver. *Id.* As here, "the police officers in this case did not

9

testify as 'experts as to the packaging, cost, and typical personal usage of controlled substances.' " *Id.* at ¶ 22 (quoting *People v. Sherrod*, 394 Ill. App. 3d 863, 866 (2009)). In *Sherrod*, the 1.8 grams of cocaine in 17 packages recovered from defendant, without more, was insufficient to support an intent to deliver. *Sherrod*, 394 Ill. App. 3d at 866. Defendant had $35 in cash and did not possess weapons, scanners, beepers, a cell phone or drug paraphernalia. *Id.* Defendant was not seen engaging in any drug transactions. *Id.* at 867. Like *Ellison* and the instant case, the State did not offer evidence of the contraband's purity. *Id.* at 866. Similarly, in *People v. Clinton*, 397 Ill. App. 3d 215, 226 (2010), the evidence was found insufficient to support a conviction for possession with intent to deliver where defendant possessed 13 packets of suspected heroin and $40 in cash. He did not have any drug paraphernalia, a cell phone, pager or weapons on his person. *Id.* The State's witnesses did not testify that the amount of contraband was inconsistent with personal use, that it was packaged in a manner typical for sale, that the area was known for drug activity, or that particular paraphernalia was required to consume the contraband. *Id.*

¶ 25        Neither Latham nor Martin testified as to common means of packaging drugs for sale or the cost of cocaine. In fact, neither officer testified about the specific packaging of the seized cocaine. Nor did the State present any evidence that the packaging was representative of drug dealing, not drug use. The only testimony regarding the packaging of the contraband was provided by Koulis, the forensic scientist and did not connect the packaging to an intent to deliver. In addition, although Koulis testified regarding the cocaine she analyzed, she only tested enough to reach the required weight for the offense charged. She did not analyze all the packets in exhibit No. 1 or any of the packets in exhibit No. 2. While it is not unreasonable to assume the second bag contained packages of cocaine, the combined quantity of the two bags does not definitively support intent to deliver. *Robinson*, 167 Ill. 2d at 410 (quantity in excess of amount needed for statutory

10

minimum is one of "many factors" to consider when determining intent to deliver). Similarly, Koulis testified that she did not test the purity of the cocaine and, in her opinion, the materials she tested was a substance that contained cocaine. Her testimony regarding the purity was not based on a forensic determination but on a lack of scientific determination. Thus, the State did not establish whether it was "pure" or "cut" as is typical with cocaine for sale.

¶ 26        Defendant did not possess any weapons or drug paraphernalia. Latham testified to the variety of items a drug addict might employ to use cocaine, none of which were discovered on defendant. Latham also testified, however, that not all users carry their paraphernalia and that he did not know whether defendant suffered from a drug addiction. Defendant was in possession of a cell phone, a common item, and $746 in cash. There was no testimony as to the source of the cash and Latham said he did not know if defendant had won the money on a lottery ticket or if it was earnings from his employer. The amount of cash was not so excessive as to exclude that defendant was carrying it in order to grocery shop or purchase a television. Finally, the discovered cocaine was packaged in small bags divided among two larger bags. While the multiple small packages could suggest drug sales, they could also indicate that defendant purchased the two bags for his personal use and had not yet returned home with them. As Martin testified, Williams was not asked whether he sold the cocaine to defendant.

¶ 27        We find the State did not produce the minimum evidence to sustain Nunn's conviction for intent to deliver. Where, as here, a small amount of drugs is seized, the minimum evidence to sustain a conviction for intent to deliver is the drugs were packaged for sale and one additional factor indicating intent to deliver. *Clinton*, 397 Ill. App. 3d at 225. The State did not provide any testimony connecting the amount of cocaine recovered and the way it was packaged or present any other *Robinson* factors sufficient to establish beyond a reasonable doubt defendant possessed the

11

cocaine with the intent to deliver. The State did not demonstrate the quantity could not be for personal use. Neither the defendant's cell phone nor his money could overcome the lack of other factors supporting intent to deliver. We reduce defendant's conviction for unlawful possession of a controlled substance with intent to deliver to unlawful possession of a controlled substance and remand for resentencing.

¶ 28                                    III. CONCLUSION

¶ 29         For the foregoing reasons, the judgment of the circuit court of Kankakee County is reversed, conviction is reduced and case is remanded.

¶ 30         Reversed and remanded.