2019 IL App (1st) 170644

FIRST DISTRICT
SIXTH DIVISION
April 26, 2019

No. 1-17-0644

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 04381 |
| | ) | |
| MICHAEL FORT, | ) | Honorable |
| | ) | James Karahalios, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Justice Cunningham concurred in the judgment and opinion.
Justice Connors concurred in part and dissented in part, with opinion.

**OPINION**

¶ 1     Defendant, Michael Fort, appeals his conviction, after a bench trial, of Class 1 attempted identity theft and his sentence of seven years' imprisonment. On appeal, defendant contends that his conviction should be reversed, and the cause remanded for a new trial, where (1) the State failed to prove beyond a reasonable doubt that he knowingly used the personal identification of another person when he filled out an application to lease a Mercedes-Benz, (2) the evidence did not support a finding that defendant attempted to obtain control of property valued over $100,000, and (3) the State failed to prove that defendant intended to defraud the car dealership beyond a reasonable doubt. For the foregoing reasons, we reverse and remand for further proceedings.

¶ 2                                    I. JURISDICTION

¶ 3     The trial court sentenced defendant on February 2, 2017. Defendant filed a notice of appeal on March 2, 2017. Accordingly, this court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rules 603 (eff. Feb. 6, 2013) and 606 (eff. Dec. 11, 2014), governing appeals from a final judgment of conviction in a criminal case entered below.

¶ 4                                    II. BACKGROUND

¶ 5     Defendant was charged by indictment with one count of Class 1 attempted identity theft, one count of Class 3 identity theft, and two counts of forgery, in connection with his attempt to use a social security number ending in 2282 to lease a Mercedes-Benz S550 on February 13, 2016.

¶ 6     At defendant's bench trial, Kelly Rodriguez testified that she is the finance manager at a Mercedes-Benz dealership located on 1000 West Golf Road in Hoffman Estates, Illinois. On February 13, 2016, Rodriguez met with defendant regarding his lease application. Prior to meeting with him, Rodriguez had received documents from sales manager Ron Genot, including an "e-pencil" which she described as "an agreement upon terms." The e-pencil showed "an agreement upon the length of the lease, the miles per year of the lease, the down payment, the monthly payment, and then the final out the door price of the lease." Rodriguez testified that the Manufacturer's Suggested Retail Price of the specific Mercedes defendant attempted to lease was "approximately $120,000. $119,705.00 to be exact."

¶ 7     Rodriguez also received defendant's credit application, in which he provided his name, social security number, date of birth, address, phone number, and employment and income information. Defendant's application listed a social security number ending in 2282, listed Aeon

Management as his employer, and had 201 Lake Street in Oak Park, Illinois, as his address. Rodriguez made a routine inquiry with TransUnion and discovered that the credit score "came up as zero and said that nothing could be processed any further because there was a freeze placed by the consumer on that Social Security number." Rodriguez met with defendant and informed him of the freeze. He told her that he never put a freeze on his credit and "didn't understand why it was on there." Although Rodriguez offered defendant the use of the dealership's computers to investigate the issue, defendant stated he would go home to investigate and return later.

¶ 8 Defendant was able to lift the freeze from his credit, and his credit application was forwarded to Mercedes-Benz Financial. They asked Rodriguez for a copy of defendant's social security card "because it was coming back linked to multiple users." Defendant sent an e-mail with a copy of the card, and Rodriguez forwarded the e-mail to Mercedes-Benz Financial. The card had defendant's name on it, and the last four numbers were 2282. Rodriguez later spoke with a funding specialist, who told her that she received the e-mail and found the card "questionable" because the font did not look accurate or correct. The specialist told Rodriguez that she was going to forward the matter to the Mercedes-Benz fraud division.

¶ 9 On cross-examination, Rodriguez acknowledged that Mercedes-Benz held the title to a leased vehicle, but that "the registered owner" would be the person leasing the vehicle. She stated that "the value of the car is what the value of the car is regardless of what you pay for your lease payment." Rodriguez had asked defendant specifically to verify his social security number, name and spelling, and signature. He never referred to the number he provided as a credit profile number.

¶ 10 Ryan Pesch testified that the last four digits of his social security number is 2282, and he did not give anyone permission to use his number to obtain credit. He did not know defendant or

give him permission to use his social security number to obtain credit. He became aware of the use of his social security number on February 17, 2016, when he received a phone call from the Mercedes-Benz fraud department.

¶ 11 Detective Brian Zaba testified that he works as an officer with the Hoffman Estates Police Department. On February 19, 2016, he met with defendant and advised him of his *Miranda* rights. Defendant waived his rights and agreed to speak. As part of the booking process, defendant was asked his name, address, phone number, date of birth, social security number, and place of employment. The social security number defendant provided ended with 9423. Defendant also listed his place of employment as Insanity Hair.

¶ 12 Detective Zaba showed defendant his Mercedes-Benz credit application. Defendant acknowledged that the application was filled out in his handwriting and that the signature on the application belonged to him. Detective Zaba asked defendant about the different social security number, and defendant responded that he put a credit profile number (CPN) on the application, not a social security number. He told the detective that he bought the number from a website called Legal Cpn.com, and that CPNs are used by people to build their credit. Detective Zaba also asked defendant about the discrepancy in employment he listed on the application. Defendant stated that he never worked for Aeon Management and got that information online. Regarding the social security card he used at the dealership, defendant responded that he was given the card when he purchased the CPN and understood that the CPN was not a social security number.

¶ 13 After presentation of the State's evidence, defense counsel moved for a directed finding which the trial court denied.

¶ 14    Latoya Williams, defendant's wife, testified for the defense. She explained that a CPN "is something that people obtain to use as alternative credit." She learned of CPNs from a friend who knew defendant and was familiar with his foreclosures and other challenges to his credit. In order to obtain defendant's CPN, she had to fill out an application with his full name, social security number, and a copy of defendant's driver's license. She paid $150 for the CPN, which was issued on May 28, 2011. The last four digits of the CPN was 2282. When asked whether she had "any idea that it was *** someone else's Social Security number," Latoya answered, "Absolutely not."

¶ 15    On cross-examination, Latoya was asked about an e-mail requesting defendant to provide a new address not affiliated with his old credit or with his social security number. She stated that the 201 Lake Street address was defendant's grandmother's address and where defendant resided previously. She stated that he still receives mail at that address, although defendant did not reside at that address when he filled out the Mercedes-Benz application. Although the card defendant was given after purchasing the CPN had "Social Security Administration" written on it, Latoya stated that a CPN number is not a social security number. They were given instructions on how to use the CPN in place of a social security number. Latoya again described the CPN as "alternative" credit.

¶ 16    Defendant testified that he is an entrepreneur with three separate businesses. Presently, he has a company called Insanity Hair which sells imported hair. Another business is Aeon management, which is a property management company he has had for about 12 years. When asked about his statement to police that he "made up" Aeon Management, defendant stated that Detective Zaba misquoted him. He explained to the detective that he had both companies. He

listed Aeon Management instead of Insanity Hair on his lease application because he has worked at that company the longest.

¶ 17    Defendant explained that he put down his CPN on the application, rather than his social security number, because he had been using the number "for the last few years just to reestablish my credit." He had been using the number, which ends in 2282, for five years. Defendant testified that he used the CPN to obtain credit cards and purchase vehicles. He was never given an actual card showing the number, but had a picture of the card to use. He stated that he has "excellent credit history with it." When asked whether he had any idea the CPN was the social security number of another person, defendant answered, "No, never." He first learned that it was another person's social security number when he was arrested.

¶ 18    Defendant testified that he was informed by Mercedes-Benz that his credit file was "locked," but that they may be willing to accept his application if he sent a copy of his social security card, W-2s, and bank statements. Defendant told them he didn't want to go through with the lease, but, after speaking with the dealership, he took a snapshot of "the picture of the Social Security card on it" and sent it to them. Defendant also stated that he had put the freeze on his credit because he was a victim of identity theft in the past, but had forgotten about the freeze because he had not used the CPN in a few years.

¶ 19    On cross-examination, defendant acknowledged that he used the CPN when the application asked for his social security number. He did not cross out the words and write "CPN" to reflect the nature of the number he was providing because he "never knew that was an option. I never had to do that before." He also acknowledged that he did not live at 201 Lake Street when he filled out the application, but stated that the address is on his driver's license. He further stated that he did work at Aeon Management and that he earned $119,000 a year. Although

defendant told the dealership he was no longer interested in the lease, he returned on February 19, 2016, because they kept calling him and he wanted to know why they were "still trying to push the deal through."

¶ 20    The parties stipulated to an uncertified judgment for defendant's federal conviction for bank fraud on December 3, 2015.

¶ 21    After closing argument, the trial court issued its ruling. The court found that defendant intended to deceive when he tried to obtain credit to lease the Mercedes-Benz vehicle, an element of theft. The trial court also accepted Rodriguez's testimony regarding the full retail value of the Mercedes-Benz S550. It further found that defendant intended for the dealership to believe that the CPN number he provided was a social security number because he never corrected the information on his application, nor did he tell anyone that he was using a CPN instead of his social security number. The court noted that defendant "sent a replica of this Social Security card which has the Social Security number of another" to complete his application and found his testimony that he only returned to the dealership "just to tell them off so that they'd stop bothering him with these phone calls" not credible. Rather, the trial court believed "that [the] replica was furnished with the intent to obtain control over the car." The court found that defendant was "providing false information through identity theft in order to get this Mercedes."

¶ 22    Regarding defendant's remaining testimony, the court noted that it had not "seen any paychecks that would total $119,000.00 a year in income. I haven't seen—I haven't seen one shred of evidence that [Aeon Management] existed. And the point is that as the State stated earlier, the only thing on that application which was correct was the gentleman's name." The trial court found defendant guilty beyond a reasonable doubt on all counts in the indictment. Defendant filed a motion for a new trial and obtained a new attorney who filed an amended

motion. After a hearing, the trial court denied the motion, reiterating its prior finding that defendant knowingly attempted to use a social security number that was not assigned to him to obtain control over a $119,000 car.

¶ 23     Defendant addressed the court at his sentencing hearing. He stated that he "fully believed this number was assigned to my credit and it was just my credit. *** I believe this number I had that I used for the last five years was totally part of my credit. All the credit on there was mine." Defendant expressed remorse and informed the court that he "had no intention" to harm anyone. The trial court sentenced defendant to seven years' imprisonment on the attempted identity theft count and merged the remaining counts into the attempted identity theft count. Defendant filed a motion to reconsider sentence, which the trial court denied. Defendant filed this timely appeal.

¶ 24                                         III. ANALYSIS

¶ 25     Defendant argues that the State's evidence was insufficient to prove he committed identity theft beyond a reasonable doubt. In a challenge to the sufficiency of the evidence, the relevant question is whether any rational fact finder, after viewing the evidence in the light most favorable to the State, could find the essential elements of the crime beyond a reasonable doubt. *People v. Jackson*, 232 Ill. 2d 246, 280 (2009). "[C]ircumstantial evidence meeting this standard is sufficient to sustain a criminal conviction [citation]." *Id.* at 281. Courts will not set aside a criminal conviction due to insufficient evidence unless the proof is so unsatisfactory that there exists a reasonable doubt of defendant's guilt. *People v. Pollock*, 202 Ill. 2d 189, 217 (2002).

¶ 26     Section 16-30(a)(1) of the Criminal Code of 2012 (Code) provides that "[a] person commits identity theft when he or she knowingly *** uses any personal identifying information or personal identification document of another person to fraudulently obtain credit, money, goods, services, or other property." 720 ILCS 5/16-30(a)(1) (West 2016). Defendant argues that

the evidence in the record fails to show he knowingly used the personal identification of another person when he filled out the lease application. This court addressed the knowledge element of the offense in *People v. Hernandez*, 2012 IL App (1st) 092841.

¶ 27    The defendant in *Hernandez* was convicted of one count of identity theft when she used the social security number of Maria Nodarse to purchase a Mitsubishi Eclipse on September 2, 2006. *Id.* ¶¶ 3-4. Defendant's credit application used two social security numbers: Nodarse's number was on the first page and a different number was on the second page of the application, which was otherwise left uncompleted. The bill of purchase contained Nodarse's number, but listed defendant as the purchaser. *Id.* ¶¶ 5-6.

¶ 28    In 2008, the IRS contacted Nodarse, who then obtained a copy of her credit report. She testified that she never went to a car dealership to purchase a Mitsubishi Eclipse, and she had never met defendant. *Id.* ¶ 4. During a later police interview, the defendant acknowledged that she did purchase a Mitsubishi vehicle using the social security number listed on the first page of the credit application and on the purchase agreement. When asked how she obtained that number, defendant responded that she "made it up." She stated that the number on the second page of the application was from her mother who had obtained it when she first came to this country, but defendant did not know whether it was a "good" social security number. *Id.* ¶ 10.

¶ 29    This court found that section 16G-15(a)(1) of the Illinois Identity Theft Law (now section 16-30(a)(1)), "require[s] the State to prove defendant knew the personal identifying information that she used was that 'of another person.' " *Id.* ¶ 39 (quoting 720 ILCS 5/16G-15(a)(1) (West 2008), and citing *Flores-Figueroa v. United States*, 556 U.S. 646, 657 (2009)). Since no direct evidence was presented that the defendant knew the number she used belonged to another

person, and the circumstantial evidence of defendant's knowledge was "less than overwhelming," the court vacated her conviction and remanded the case for a new trial. *Id.* ¶ 74.

¶ 30    The second district in *People v. Sanchez*, 2013 IL App (2d) 120445, agreed with *Hernandez*'s interpretation of the knowledge element. In *Sanchez*, the defendant was a high school graduate who discovered she did not have legal immigration status in this country. She needed work and looked for jobs that paid cash, so she would not need a social security number, but none were available. She eventually obtained a social security number that she purchased from "a random guy" she did not know. *Id.* ¶¶ 3-5. In January 2008, the defendant applied for work at Atlas Staffing, using the social security number she purchased. She testified that this was the only time she used the number, and she never used it to apply for credit or for government benefits. She obtained a temporary job through Atlas Staffing and earned $22,656.30 through July 2009. *Id.* ¶¶6-7.

¶ 31    Investigating a potential identity theft, Officer Donald Corp spoke with the defendant and recorded her statement. Defendant acknowledged that she obtained employment through Atlas Staffing by using a social security number that did not belong to her. She stated that she thought the number was a random, unassigned number when she purchased it. In fact, the number defendant used belonged to Maria Hernandez. At trial, Hernandez testified that she was a good friend of defendant's mother. When Officer Corp asked defendant whether she knew Hernandez, defendant answered, " 'No, I don't.' " *Id.* ¶¶ 8-9. Hernandez further stated that she did not give defendant permission to use her social security number, but acknowledged that she had not suffered financial losses due to defendant's use of her number. *Id.* ¶ 10. After a bench trial, the trial court found defendant guilty of identity theft of between $10,000 and $100,000, a Class 1 felony. *Id.* ¶ 11.

¶ 32    Citing *Hernandez* and *Flores-Figueroa*, the court determined that to prove identity theft, the State is required to show that the defendant knew the social security number she used belonged to another person. *Id.* ¶ 21. The State argued that evidence showed the defendant knew she could not get a valid social security number, and she paid someone to obtain a number she eventually used to gain employment through Atlas Staffing. *Id.* ¶ 23. However, the court noted that the defendant thought the number was "random" and "unassigned," and she did not know it belonged to someone else. *Id.* ¶ 22. Although the defendant knew the social security number she used was not her own, there was no evidence showing that she knew the number belonged to another person. No testimony was presented that a real social security number was more effective than a "made-up" number for obtaining employment. Also, the defendant could not have known the number "worked" until she had used it successfully at least one time. The court found that "none of this evidence supports [defendant's] conviction for knowingly using a number belonging to someone else." *Id.* ¶ 24. It reversed the defendant's identity theft conviction. *Id.* ¶ 47.

¶ 33    Here, Latoya testified that she obtained the CPN for defendant and believed it could be used as "alternative credit." She did not think a CPN was a social security number. When asked whether she had "any idea that it was *** someone else's Social Security number" Latoya answered, "Absolutely not." Defendant testified that he used his CPN "for the last few years just to reestablish my credit." He had been using the number, which ends in 2282, for five years. Defendant acknowledged that he used the CPN to obtain credit cards and purchase vehicles and he has "excellent credit history with it." However, when asked whether he had any idea the CPN was the social security number of another person, defendant answered, "No, never." He first learned that it was another person's social security number when he was arrested. He "fully

believed this number was assigned to my credit and it was just my credit." Like *Hernandez* and *Sanchez*, the direct evidence here does not show beyond a reasonable doubt that defendant knew he was using the social security number of another person.

¶ 34    Circumstantial evidence also does not support such a finding. As set forth in *Hernandez* and *Sanchez*, to convict defendant of identity theft, the State is required to prove that he knew the number he used belonged to another person. Where specific knowledge is an element of the offense, general knowledge that a violation may have occurred is insufficient to support a conviction. See *People v. Wright*, 194 Ill. 2d 1, 20-21 (2000) (finding that for the offense of possession of title without complete assignment, "irregularities in defendant's record keeping may prove his knowledge of a violation," but are insufficient to prove that defendant had a criminal purpose which is the mental state required under the statute).

¶ 35    Here, the circumstantial evidence shows that defendant may have, with knowledge, improperly used the CPN in place of his social security number for credit purposes. However, according to the clear terms of the statute, the offense of identity theft does not punish defendant's mere use of a number that he knows is not his own. Rather, the offense requires proof that defendant used the number, knowing it belonged to another person. 720 ILCS 5/16-30(a)(1) (West 2016). To conclude that defendant had such knowledge, given the evidence in this case, would be pure speculation. *Wright*, 194 Ill. 2d at 21. Since that knowledge is a required element of the identity theft offense, we reverse defendant's convictions for attempted identity theft and identity theft. See *Hernandez*, 2012 IL App (1st) 092841, ¶ 39; *Sanchez*, 2013 IL App (2d) 120445, ¶ 21.

¶ 36    We note that defendant was charged and convicted of an inchoate offense (attempted identity theft) and a principal offense (identity theft). Section 8-5 of the Code (720 ILCS 5/8-5

(West 2016)) provides that "[n]o person shall be convicted of both the inchoate and the principal offense." "Where a defendant has been convicted of both the principal and inchoate offenses, the proper procedure is to vacate the conviction and sentences with respect to the inchoate offenses." *People v. Johnson*, 250 Ill. App. 3d 887, 905 (1993). Since we reverse both convictions, however, this error ultimately has no effect on defendant's convictions or sentences.

¶ 37    Defendant also contends that the evidence was insufficient to convict him of forgery. The trial court, however, merged the forgery convictions into the attempted identity theft conviction and thus did not impose a sentence upon those convictions. Absent the imposition of a sentence on the forgery convictions, this court cannot consider the merits of defendant's claim. *People v. Caballero*, 102 Ill. 2d 23, 51 (1984). Pursuant to our authority under Illinois Supreme Court Rule 615(b)(2), however, we can remand the case for the trial court to conduct a sentencing hearing on the forgery convictions in light of this opinion. See *People v. Dixon*, 91 Ill. 2d 346, 353-54 (1982) (finding that where the trial court erroneously merged convictions, and the appeal was properly before the appellate court on the remaining convictions, this court is "authorized to remand the cause for imposition of sentence"); see also *People v. Relerford*, 2017 IL 121094, ¶ 75. If defendant decides to appeal his forgery convictions after sentencing, this court can address the merits of defendant's sufficiency of the evidence argument at that time.

¶ 38    For the foregoing reasons, we reverse the judgment of the circuit court and remand for sentencing on defendant's forgery convictions.

¶ 39    Reversed and remanded.

¶ 40    JUSTICE CONNORS, concurring in part and dissenting in part:

¶ 41    I concur with the majority's conclusion that we should remand for sentencing on defendant's two unsentenced forgery convictions (counts III and IV). However, I write separately, and respectfully dissent, because I would also remand for sentencing on defendant's identity theft conviction (count II). The trial court only sentenced defendant on his conviction for attempted identity theft (count I). Therefore, this court lacks jurisdiction to review the merits of any of defendant's three unsentenced convictions and, thus, I strongly disagree with the majority's decision to reverse defendant's identity theft (count II) conviction on the merits. I also disagree with the majority's decision to *reverse* defendant's conviction for attempted identity theft (count I). Instead, I believe this court is required to *vacate* defendant's conviction and sentence for attempted identity theft because defendant was erroneously convicted of both attempted identity theft (the inchoate offense) and identity theft (the principal offense).

¶ 42    After his bench trial, defendant was found guilty and convicted of the following four respectively numbered counts: (1) attempted identity theft (720 ILCS 5/8-4, 16-30(a)(1) (West 2016)), (2) identity theft (*id.* § 16-30(a)(3)), and (3) and (4) two counts of forgery (*id.* § 17-3(a)(2)). At sentencing, the court noted that count I for attempted identity theft was a Class 1 felony and merged counts II, III, and IV, which were all Class 3 offenses, into count I. The court then sentenced defendant to seven years' imprisonment on count I. For the reasons that follow, I find that defendant was improperly convicted of both attempted identity theft (the inchoate offense) and identity theft (the principal offense) and that his conviction and sentence for attempted identity (count I) theft should be vacated, with the three remaining convictions remanded for resentencing (counts II, III, and IV).

¶ 43    Section 8-5 of the Criminal Code of 2012 (Code) states, "[n]o person shall be convicted of both the inchoate and principal offense." *Id.* § 8-5. The majority briefly acknowledges, "[w]here a defendant has been convicted of both the principal and inchoate offenses, the proper procedure is to vacate the conviction and sentences with respect to the inchoate offenses" (*People v. Johnson*, 250 Ill. App. 3d 887, 905 (1993)), but concludes that "[s]ince we reverse both convictions, however, this error ultimately has no effect on defendant's convictions or sentences." *Supra* ¶ 36. I disagree with this conclusion.

¶ 44    Here, defendant was convicted of both attempted identity theft (the inchoate offense) and identity theft (the principal offense). See *People v. Boyce*, 2015 IL 117108 (recognizing both attempt and solicitation as inchoate offenses). As a result, the proper procedure, as the majority acknowledges, is to vacate defendant's conviction and sentence for the inchoate offense, *i.e.*, attempted identity theft. See *People v. Kliner*, 185 Ill. 2d 81, 136 (1998) (our supreme court recognized the "well-established principle that a defendant cannot be convicted of both the inchoate offense *** and the principal offense"). I agree with the majority that defendant's attempted identity theft (count I) conviction and sentence must be vacated. However, in addition to remanding for sentencing on the forgery convictions (counts III and IV), this court is also required to remand for resentencing on defendant's conviction for identity theft (count II) because defendant was only sentenced pursuant to his conviction for attempted identity theft (count I). The majority ignores that vacating defendant's conviction and sentence for attempted identity theft (count I), *i.e.*, the only final judgment in this case, leaves only defendant's three unsentenced, nonfinal convictions, which this court lacks jurisdiction to review. The majority has essentially decided to reverse a nonfinal conviction on the merits, which is completely improper.

¶ 45    In addition to arguing that the State failed to prove him guilty beyond a reasonable doubt of identity theft, defendant also argues that the State failed to meet its burden on the forgery counts. The State responds that this court lacks jurisdiction to review defendant's forgery convictions because no sentence was imposed on those counts. This court has an independent duty to ensure that jurisdiction is proper and will consider issues of jurisdiction regardless of whether either party has raised them. *People v. Aldama*, 366 Ill. App. 3d 724, 725 (2006). The majority agrees with the State's assertion and recognizes that "[a]bsent the imposition of a sentence on the forgery convictions, this court cannot consider the merits of defendant's claim," but that this court "can remand the case for the trial court to conduct a sentencing hearing on the forgery convictions in light of this opinion." *Supra* ¶ 37. However, the majority fails to examine its jurisdiction over defendant's unsentenced conviction for identity theft (count II) and does not explain why it will not also remand for sentence on count II.

¶ 46    It is well settled that " '[i]n a criminal case, there is no final judgment until the sentence has been imposed, and in the absence of a final judgment, an appeal cannot be entertained.' " *People v. Goodwin*, 2018 IL App (1st) 152045, ¶ 58 (quoting *People v. Thomas*, 402 Ill. App. 3d 1129, 1131 (2010)). In *People v. Dixon*, 91 Ill. 2d 346, 353 (1982), our supreme court addressed the "anomalous" situation where a trial judge failed to impose sentence on the defendant's convictions for mob violence and disorderly conduct based on the judge's belief that those convictions merged into the other two offenses on which he did impose sentence. The appellate court refused to remand for sentencing on the two convictions upon which no sentence had been imposed. *Id.* at 349. The supreme court found that the appellate court have remanded the matter for sentencing based on the odd facts of the case and explained as follows:

"Since the appeal was properly before the appellate court with regard to defendant's convictions for armed violence and aggravated battery, and the failure to impose sentences upon the two unappealed convictions had been intimately related to and 'dependent upon' the appealed convictions within the meaning of Rule 615(b)(2), we believe that court was authorized to remand the cause for imposition of sentence." *Id.* at 353-54.

¶ 47 Subsequently, "*Dixon*'s scope [was] narrowed by *People v. Relerford*, 2017 IL 121094." *People v. Jamison*, 2018 IL App (1st) 160409, ¶ 34. In *Relerford*, our supreme court found that the appellate court's decision to address the defendant's unsentenced convictions was unwarranted under the circumstances of that case. 2017 IL 121094, ¶ 71. Specifically, the supreme court determined that the appellate court's reliance on *Dixon* was misplaced for two reasons. *Id.* ¶ 74. First, the court found *Dixon* distinguishable on its facts because *Dixon* was "anomalous" in that "the circuit court determined, albeit incorrectly, that sentences could not be imposed on the lesser offenses because they merged into the other offenses." *Id.* Second, the court stated that *Dixon* must be given a narrower interpretation than the one given by the appellate court because "[a] close reading of *Dixon* makes clear that, to the extent the appellate court had any jurisdiction to address the nonfinal convictions, that jurisdiction was limited to ordering a remand for imposition of sentences on the lesser convictions." *Id.* ¶ 75. As a result, the court held that the appellate court had interpreted *Dixon* too broadly, and improperly considered the merits of the defendant's unsentenced convictions. *Id.*

¶ 48 Here, the only final judgment the circuit court entered was the seven-year sentence imposed for attempted identity theft (count I) after the court merged counts II, III, and IV into count I. The court did not impose a sentence on any of the other three counts. Because counts II, III, and IV were merged into count I and defendant was only sentenced on count I, this court lacks

jurisdiction to review the merits any of defendant's unsentenced convictions. See *Relerford*, 2017 IL 121094, ¶ 75; *Jamison*, 2018 IL App (1st) 160409, ¶ 34.

¶ 49 This is significant because the majority's analysis simultaneously examines both defendant's conviction for attempted identity theft (count I) and identity theft (count II), with count II being a nonfinal judgment over which we do not have jurisdiction. The majority recognizes that unsentenced convictions are not final judgments, and even makes the finding that "[a]bsent the imposition of a sentence on the forgery convictions, this court cannot consider the merits of defendant's claim." *Supra* ¶ 37. It is unclear why the majority does not apply this logic to defendant's conviction for identity theft (count II), which was also unsentenced and, thus, in the same procedural posture as the two forgery convictions (counts III and IV). In my view, this court does not have jurisdiction to address the merits of defendant's identity theft conviction. As recognized in *Relerford*, to the extent this court has any jurisdiction to review defendants' nonfinal convictions (counts II, III, and IV), that jurisdiction is limited to ordering a remand for the imposition of sentences on the lesser convictions. 2017 IL 121094, ¶ 75.

¶ 50 Therefore, I would find that defendant's conviction and sentence for the inchoate offense of attempted identity theft must be vacated and would remand this matter for sentencing on the remaining three counts.