2021 IL App (1st) 192108-U

No. 1-19-2108

Order filed May 21, 2021

SIXTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 4381 |
| | ) | |
| MICHAEL FORT, | ) | Honorable |
| | ) | Joseph Cataldo, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Presiding Justice Mikva and Justice Oden Johnson concurred in the judgment.

**ORDER**

¶ 1   *Held*:   We affirm defendant's convictions for forgery over his contention that the State failed to prove beyond a reasonable doubt that he had the requisite mental state to commit the offenses.

¶ 2   Following a bench trial, defendant Michael Fort was found guilty of attempt identity theft (720 ILCS 5/8-4(a), 16-30(a)(1) (West 2016)), identity theft (720 ILCS 16-30(a)(3) (West 2016)), and two counts of forgery (720 ILCS 5/17-3(a)(2) (West 2016)). The trial court merged the identity

theft and forgery counts into the attempt identity theft count and sentenced him to seven years' imprisonment. Defendant appealed, and this court reversed his attempt identity theft and identity theft convictions and remanded the matter so defendant could be sentenced on the remaining two forgery convictions. *People v. Fort*, 2019 IL App (1st) 170644. On remand, the trial court sentenced defendant to two years' imprisonment on the forgery convictions. Defendant appeals from that judgment, arguing the State failed to prove him guilty of forgery beyond a reasonable doubt because the evidence did not show that he acted with the requisite intent to defraud and knowledge. For the following reasons, we affirm.

¶ 3 Because we set forth the facts underlying defendant's convictions in our first opinion, we recount some of those facts and set forth additional facts as necessary to our discussion.

¶ 4 The State charged defendant by indictment with one count of Class 1 attempted identity theft (count I), one count of Class 3 identity theft (count II), and two counts of forgery (counts III and IV) in relation to his attempt to use a social security number ending in 2282 to lease a Mercedes-Benz S550 on February 13, 2016. As relevant here, count III alleged that defendant, "knowingly and with the intent to defraud, issued or delivered *** a credit application to Mercedes Benz dealership with social security number ending -2282 issued to Michael D[.] Fort, purportedly made by authority of one who did not give such authority and the credit application was apparently capable of defrauding." Count IV alleged that defendant, "knowingly and with the intent to defraud, issued or delivered *** a social security card, bearing social security number ending -2282 issued to Michael D[.] Fort, purportedly made by authority of one who did not give such authority and the credit application [*sic*] was apparently capable of defrauding."

¶ 5    In opening statements, defense counsel argued that "this case is going to rely on what [defendant's] intent was" and did he attempt to defraud or "was he in fact the victim." Counsel also pointed out that defendant was attempting to lease the car and not "walk out with the title" so "intent will be lacking."

¶ 6    At defendant's bench trial, Kelly Rodriguez testified that she was the finance manager at the Mercedes-Benz dealership on Golf Road in Hoffman Estates. On February 13, 2016, Rodriguez met with defendant regarding his application to lease an automobile. Prior to meeting with defendant, she received documents from the sales manager, including an "e-pencil" which she described as "an agreement upon terms." The e-pencil showed "an agreement upon the length of the lease, the miles per year of the lease, the down payment, the monthly payment, and then the final out the door price of the lease." According to Rodriguez, the Manufacturer's Suggested Retail Price of the automobile defendant attempted to lease was $119,705.

¶ 7    Rodriguez also received defendant's credit application. She explained that the dealership requires the customer to fill out on the application his or her name, social security number, date of birth, address, phone number, and employment information. Defendant's application listed a social security number ending in 2282, Aeon Management as his employer, and 201 Lake Street in Oak Park as his address. Rodriguez made a routine inquiry with TransUnion and discovered the credit score "came up as zero and said that nothing could be processed any further because there was a freeze placed by the consumer on that Social Security number." She met with defendant, informed him of the freeze, and asked him to verify his name and social security number as listed on the application. Defendant verified the name and social security number he listed were correct. He told Rodriguez that he never put a freeze on his credit and "didn't understand why it was on there."

Rodriguez offered defendant the use of the dealership's computers to investigate the issue, but defendant stated he would go home to investigate and return later, stating "I'll be all right [*sic*], I only live about a mile from here."

¶ 8     Defendant was able to lift the freeze from his credit, and his credit application was forwarded to Mercedes-Benz Financial, which asked the dealership to obtain a copy of his social security card because the social security number "was coming back linked to multiple users." A salesperson forwarded to Rodriguez an e-mail sent by defendant, which contained a copy of the social security card. The card listed defendant's full name, "Michael Dewayne Fort," and contained a Social Security number ending in 2282. Rodriguez forwarded it to Mercedes-Benz Financial. She later spoke with a funding specialist, who told her that she received the e-mail and found the card "questionable because the font did not look accurate or correct." The specialist told Rodriguez that she was going to forward the matter to the Mercedes-Benz fraud division.

¶ 9     On cross-examination, Rodriguez testified defendant never tendered what purported to be an actual social security card but rather she received an image of the card from the salesman. Rodriguez confirmed she asked defendant specifically to verify his social security number, name and spelling, and signature, and that he did so. He never indicated the number he provided was a credit profile number (CPN) as opposed to a social security number. According to Rodriguez, applicants were required to provide a social security number.

¶ 10     Ryan Pesch testified the last four digits of his social security number was 2282, he did not know defendant, and he did not give anyone permission to use his social security number to obtain credit. He became aware of the use of his social security number on February 17, 2016, when he received a phone call from the Mercedes-Benz fraud department.

¶ 11  Detective Brian Zaba testified that, on February 19, 2016, he met with defendant and advised him of his *Miranda* rights (*Miranda v. Arizona*, 384 U.S. 436 (1966)). Defendant waived his rights and agreed to speak with Zaba, who began the interview by asking defendant standard booking questions, including his name, address, phone number, date of birth, social security number, and place of employment. In response, defendant told Zaba his social security number ended with 9423 and he worked at Insanity Hair.

¶ 12  Zaba showed defendant his Mercedes-Benz credit application, and defendant acknowledged he filled out and signed the application. Zaba asked defendant about the different social security number, and defendant responded he put a CPN on the application, not a social security number. He told Zaba he bought the number from a website called LegalCPN.com, and that CPNs are used by people to build their credit. Zaba also asked defendant about the discrepancy in employment he listed on the application. Defendant stated he never worked for Aeon Management and got the information from online. Regarding the social security card he furnished to the dealership, defendant stated he was given the card when he purchased the CPN, knew it was not valid, and understood the CPN was not a social security number.

¶ 13  On cross-examination, defense counsel asked Zaba whether it would "be fair to say" that defendant used the CPN "so that he could build credit or obtain things because his credit was bad," and Zaba replied affirmatively. Defendant did not tell Zaba he had "opened" Aeon Management. Zaba looked up Aeon Management online but did not call the phone number defendant provided in the credit application because defendant stated he never worked there.

¶ 14  Defendant moved for a directed finding, which the trial court denied.

¶ 15    Latoya Williams, defendant's wife, testified she learned of CPNs from a friend who knew defendant and was familiar with his foreclosures and other challenges to his credit. Williams explained a CPN "is something that people obtain to use as alternative credit." In order to obtain the CPN, Williams's friend referred her to Nina Adams and gave her Adams's website information, email address and telephone number. Williams corresponded, via email, with Adams and Kimberly Taylor, Adams's coworker. Williams identified an email she received from Taylor. The email included a credit application as an attachment along with Adams's bank account information so Williams could pay her for the CPN. Williams procured a CPN for defendant after his car was repossessed and his credit was "completely shot." To get the CPN, she filled out the application for defendant which included his full name, social security number, and copy of his driver's license. She paid $150 for the CPN, which was issued on May 28, 2011. The last four digits of the CPN was 2282. When asked whether she had "any idea that it was *** someone else's Social Security number, Williams replied, "Absolutely not."  After the CPN was issued, defendant received in the mail and by e-mail a document which looked like a social security card, including a Social Security Administration insignia, on which was printed the CPN. Defendant signed his name on the card.

¶ 16    On cross-examination, the State asked Williams about an e-mail requesting defendant to provide a new address not affiliated with his old credit or with his social security number. She stated the 201 Lake Street address was defendant's grandmother's address, he had resided there previously, and still received mail there. However, he did not reside at that address when he filled out the Mercedes-Benz application. Although the card defendant was given after purchasing the CPN had "Social Security Administration" written on it, Williams stated a CPN is not a social

security number. They were given instructions on how to use the CPN in place of a social security number.

¶ 17    Defendant testified that he is an entrepreneur with three separate businesses. At the time of trial, he had a company called Insanity Hair, which sold imported hair. He also had Aeon Management, which was a property management company that he had for "a little over about 12 years." When asked about his statement to police that he "made up" Aeon Management, he testified Zaba misquoted him, and he actually told Zaba that he had both companies and that Zaba could look up Aeon Management online. He listed Aeon Management instead of Insanity Hair on his lease application because he had worked at that company the longest.

¶ 18    Defendant explained he wrote his CPN, which ended with 2282, on the lease application, rather than his social security number, because he had been using the number "for the last few years just to reestablish [his] credit." He had used the CPN to obtain credit cards and purchase vehicles and had an "excellent credit history with it." He was never given an actual card showing the number but had a picture of the card to use.

¶ 19    When asked whether he had any idea the CPN was the social security number of another person, defendant answered, "No, never." He first learned the CPN was another person's social security number when he was arrested.

¶ 20    While at the dealership, defendant was told his credit file was "locked." Defendant went home to unlock his credit and received a call from the salesman telling him "they may be willing to do the deal" if he sent a copy of his social security card, W-2s, and bank statements. Defendant told the salesman he never had to do that before to obtain a vehicle and that he no longer wanted to lease the vehicle. However, as soon as he got off the phone, he took a snapshot of "the picture

of the Social Security card on it" and sent it to the salesman's cell phone. Defendant also testified he had put the freeze on his CPN because he was a victim of identity theft in the past, but had forgotten about the freeze because he had not used the CPN in a few years.

¶ 21 On cross-examination, defendant acknowledged he used the CPN when the credit application asked for his social security number. He did not cross out the words" social security number" and write "CPN" to reflect the nature of the number he was providing because he "never knew that was an option." He wrote down the CPN to get credit to lease the car even though it was not his social security number. He also acknowledged he did not live at 201 Lake Street when he filled out the application, but stated the address is on his driver's license. He further stated that he did work at Aeon Management, earning $119,000 a year.

¶ 22 Regarding the picture of the social security card he sent to the salesman, defendant testified he sent the picture to the salesman's personal cell phone with text saying, "I am no longer interested [in leasing the car]." Both the salesman and the finance manager continued to call him about the lease even though he had told them he was no longer interested and, when defendant attempted to call them to again express his intent, they did not return his calls. Defendant therefore went into the dealership on February 19, 2016, to ask why they kept "trying to push the deal through" and were not returning his calls.

¶ 23 The parties stipulated to the admission of an uncertified judgment for defendant's federal conviction for bank fraud on December 3, 2015.

¶ 24 In closing argument, defense counsel argued that "intent is lacking" in this case because it did not make sense for defendant to provide his driver's license number and other personal details if he was trying to defraud the dealership. Counsel noted that Williams explained how she procured

the CPN on defendant's behalf and that the court had documents before it related to the acquisition of that CPN. Counsel pointed out that "we have on the back end the woman who they obtained [the CPN] from, and, again, there's a leap here because we do not have Kimberly Taylor in here to testify. But there's a Kimberly Taylor who was caught by the Feds selling these social security numbers as CPN numbers." Counsel argued that the State failed to meet their burden where there is a reasonable explanation as to why defendant used someone else's social security number.

¶ 25    The trial court found defendant guilty of all four counts in the indictment. In doing so, the court found defendant intended to deceive when he tried to obtain credit to lease the vehicle. It further found defendant intended for the dealership to believe that the CPN he provided was a social security number because he never corrected the information on his application, nor did he tell anyone that he was using a CPN instead of his social security number, even when specifically asked by Rodriguez to confirm the number he provided on the application. The court noted defendant "sent a replica of this Social Security card which has the Social Security number of another" to complete his application and found his testimony that he only returned to the dealership "just to tell them off so that they'd stop bothering him with these phone calls" not credible. Rather, the court believed the replica was furnished with the intent to obtain control over the car." The court found that defendant was "providing false information through identity theft in order to get this Mercedes."

¶ 26    Regarding defendant's remaining testimony, the court noted it had not "seen any paychecks that would total $119,000.00 a year in income" or "one shred of evidence that [Aeon Management] existed." The court noted its point was, as the State had noted in its argument, "the only thing on that application which was correct was [defendant's] name."

¶ 27 Defendant filed a posttrial motion, which was later amended by new counsel. The trial court denied the motion, reiterating its prior finding that defendant knowingly attempted to use a social security number that was not assigned to him to obtain control over a $119,000 car.

¶ 28 The trial court sentenced defendant to seven years' imprisonment on the attempted identity theft count and merged the remaining counts into that count. Defendant filed a motion to reconsider sentence, which the court denied. Defendant appealed.

¶ 29 On appeal, we reversed defendant's attempt identity theft and identity theft convictions. In doing so, we explained the identity theft statute required the State to prove defendant knew the Social Security number he wrote on his credit application belonged to another person. *Fort*, 2019 IL App (1st) 170644, ¶ 29 (citing *People v. Hernandez*, 2012 IL App (1st) 092841, ¶ 39). We concluded the State's proof on this element was lacking, finding "the circumstantial evidence show[ed] that defendant may have, with knowledge, improperly used the CPN in place of his social security number for credit purposes" but to conclude defendant knew the number belonged to that of another person "would be pure speculation." *Id.* ¶ 35 We therefore reversed defendant's attempt identity theft and identity theft convictions, and remanded the case to the trial court for defendant to be sentenced on his forgery convictions. *Id.* ¶ 37. We declined to address defendant's argument the evidence was insufficient to sustain his forgery convictions as no sentence had been imposed on those convictions, stating "[i]f defendant decides to appeal his forgery convictions after sentencing, this court can address the merits of defendant's sufficiency of the evidence argument at that time." *Id.*

¶ 30 Justice Connors concurred in part and dissented in part. She agreed with the conclusion the matter should be remanded for sentencing on defendant's forgery convictions (counts III and IV).

*Id.* ¶ 41 (Connors, J., dissenting). However, she concluded the matter should also have been remanded for sentencing on defendant's identity theft conviction (count II), because the trial court imposed sentenced only on his conviction for attempted identity theft (count I) and, therefore, this court had jurisdiction only to review that conviction. *Id.* Additionally, she disagreed with our decision to reverse defendant's conviction for attempted identity theft, instead concluding that conviction and sentence should have been vacated "because defendant was erroneously convicted of both attempted identity theft (the inchoate offense) and identity theft (the principal offense)." *Id.*

¶ 31    On remand, after discussing this court's mandate and noting there remained two counts of forgery on which no sentence had been imposed, the trial court asked the parties whether they were prepared to go to sentencing on counts III and IV, to which the parties responded affirmatively. The State informed the court "[t]he Class 3 forgeries were punishable by [two] to [five] years" and, after setting forth defendant's criminal history, asked the court to "sentence the defendant accordingly." Defense counsel requested the court impose the minimum two-year sentence so defendant could challenge the two forgery convictions. The court noted it had read this court's opinion, as well as defendant's August 2016 presentence investigation report (PSI), and stated, "I will sentence you to [two] years Illinois Department of Corrections with one year of mandatory supervised release. I will give you credit for 869 days[, which] is more than the sentence is[,] so it's basically time served." No mittimus was issued but the record contains a "criminal disposition sheet," which was signed by the judge. The criminal disposition sheet contains the following handwritten notations:

"Ct 1 – reversed

Ct 2 – reversed

Ct 3, 4 sent for resentencing

Sent: 2 yrs IDOC + 1 yr MSR

Credit for 869 days doc TAS/TCS

FTS."

In the right-hand margin of the criminal disposition sheet, under the heading "CODES," there is additional handwritten notation, stating "3 [and] 4" above two numerical codes.

¶ 32    This appeal followed.

¶ 33    On appeal, defendant contends the State failed to prove him guilty of forgery beyond a reasonable doubt. Specifically, he argues the State failed to prove he acted with the requisite intent to defraud and knowledge.

¶ 34    As an initial matter, we must address our jurisdiction to consider defendant's appeal. See *Almgren v. Rush-Presbyterian-St. Luke's Medical Center*, 162 Ill. 2d 205, 210 (1994) (appellate court has the independent duty to consider its jurisdiction). In our initial review of this case, we questioned whether we had jurisdiction because it was not clear whether the trial court had imposed sentences on both counts of forgery as required by our mandate in defendant's first appeal. Therefore, we asked the parties for supplemental briefs on the issue. After reviewing the submissions of the parties and the entire record, we agree with the parties and conclude we have jurisdiction to review both forgery convictions.

¶ 35    "Generally, in a direct appeal from the trial court, the transcript of the record must reveal the basis for the jurisdiction of the appellate court." *Tunca v. Painter*, 2012 IL App (1st) 093384, ¶ 25. The appellate court has subject matter jurisdiction to review only final judgments. *People v.*

*Hammons*, 2018 IL App (4th) 160385, ¶ 54. In a criminal case, the final judgment is the sentence. *Id.* Thus, to determine whether we have jurisdiction to review the defendant's forgery convictions, we must determine on what convictions the trial court imposed sentence. See *People v. Relerford*, 2017 IL 121094, ¶ 34 (the appellate court lacks jurisdiction to review the merits of a defendant's unsentenced convictions).

¶ 36     Here, the trial court found defendant guilty of all counts of the indictment but originally imposed sentence only on the attempted identity theft conviction, merging the remaining counts into that conviction. In our prior opinion, we reversed defendant's conviction for attempted identity theft and the merged identity theft conviction and remanded the matter for sentencing on both of defendant's forgery convictions. See *Fort*, 2019 IL App (1st) 170644, ¶¶ 37-38. In announcing defendant's sentence on remand, the court stated "I will sentence you to [two] years Illinois Department of Corrections with one year of mandatory supervised release. I will give you credit for 869 days[, which] is more than the sentence is[,] so it's basically time served." Thus, the court's oral pronouncement of sentence does not clearly establish sentence was imposed on both counts.

¶ 37     However, when placing the court's announcement of sentence in context of the entire hearing, it becomes clear the trial court, in fact, imposed sentence on both counts of forgery. First, the court noted it had read this court's opinion in the prior appeal, which remanded the case with specific instructions to impose sentence on both counts of forgery. See *id.* Second, the court's comments and the parties' arguments both indicate the court and parties understood our mandate. The court asked the parties whether they were ready to proceed to sentencing on counts III and IV, to which the parties responded in the affirmative. In its argument in aggravation, the State noted the "Class 3 *forgeries*" were punishable by two to five years, and in mitigation, defendant asked

the court to impose the minimum sentence so defendant could challenge "the forgery *convictions*." Third, the "criminal disposition sheet," which acted as the mittimus (see 735 ILCS 5/2-1801(a) (West 2016)), entered after the sentencing hearing further indicates sentence was imposed on both counts where it reflects counts III and IV (the forgery convictions) had been remanded to the trial court for sentencing, and in the right-hand margin, under the heading "CODES," is written "3 [and] 4" above two numerical codes. Accordingly, under the circumstances present here, we find sentence was imposed on both forgery convictions and, therefore, we have jurisdiction to review them. We turn now to the merits of defendant's argument.

¶ 38    When, as here, a defendant presents a challenge to the sufficiency of the State's evidence, "a reviewing court must determine whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Internal quotation marks omitted; emphasis in original.) *People v. Ross*, 229 Ill. 2d 255, 272 (2008). In doing so, the reviewing court does not retry the defendant, and "the trier of fact remains responsible for making determinations regarding the credibility of the witnesses, the weight to be given their testimony, and the reasonable inferences to be drawn from the evidence." *Id.* The mere fact that the trier of fact accepted certain testimony or made certain inferences based on the evidence does not guarantee the reasonableness of the decision. *Id.* However, the trier of fact need not disregard inferences which normally flow from the evidence or search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt. *People v. Wheeler*, 226 Ill. 2d 92, 117 (2007). "A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *People v. Collins*, 106 Ill. 2d 237, 261 (1985).

¶ 39    A person's guilt may be established solely by circumstantial evidence as long as the elements of the crime have been proven beyond a reasonable doubt. *People v. Milka*, 211 Ill. 2d 150, 178 (2004). " 'The trier of fact need not, however, be satisfied beyond a reasonable doubt as to each link in the chain of circumstances. It is sufficient if all the evidence taken together satisfies the trier of fact beyond a reasonable doubt of the defendant's guilt.' " *Id.* (quoting *People v. Hall*, 194 Ill. 2d 305, 330 (2000)).

¶ 40    In this case, defendant was convicted of two counts of forgery. As charged here, the State was required to prove beyond a reasonable doubt that defendant, acting with the intent to defraud, knowingly delivered to the dealership the credit application with social security number ending in 2282 (count III) and social security card bearing social security number ending in 2282 (count IV) knowing those documents had been falsely made and were apparently capable of defrauding the dealership. 720 ILCS 5/17-3(a)(2) (West 2016).

¶ 41    On appeal, defendant maintains the State failed to meet at least two of the elements that constitute forgery: intent to defraud and knowledge. We first consider whether defendant had the intent to defraud.

¶ 42    As set forth by our supreme court in *Brown*: "The gist of forgery is the intent to defraud [Citations.] The State must establish that a defendant had the intent to defraud by * * * delivering any document apparently capable of defrauding another." *People v. Brown*, 2013 IL 114196, ¶ 38. To prove the element of intent, the State was required to prove defendant acted

> "knowingly, and with the specific intent to deceive or cheat, for the purpose of causing financial loss to another or bringing some financial gain to [him]self, regardless of whether any person was actually defrauded or deceived. This includes an intent to cause another to

assume, create, transfer, alter, or terminated any right, obligation, or power with reference to any person or property." 720 ILCS 5/17-0.5 (West 2016).

The element of intent is rarely proved by direct evidence. *People v. Robinson*, 167 Ill. 2d 397, 408 (1995). It is often proved by circumstantial evidence, such as the defendant's statements or conduct surrounding the act, as well as the act itself. *People v. Moore*, 2015 IL App (1st) 140051, ¶ 25. In addition, if the forged document is delivered, then the intent to defraud will be presumed. *People v. Lawson*, 2015 IL App (2d) 140604, ¶ 28.

¶ 43    In this court, defendant argues the State failed to prove he acted with the intent to defraud because there was no evidence that he acted with anything but good faith when he filled out the car lease application. He notes that he provided his true and accurate name, address, and driver's license on the application and that an individual intending to defraud a car dealership would not provide accurate information that would make the transaction directly tracible to him. He also points out that, while the evidence showed he did not indicate on the application that he was providing a CPN, he did not know he was required to do so. Further, he observes the evidence showed he used the CPN for nearly five years without issue and opened credit lines with it but only after his arrest he learned the number was not legitimate.

¶ 44    After viewing the evidence in the light most favorable to the State and drawing all inferences in its favor, we conclude the State presented sufficient evidence from which the trial court could find defendant acted with intent to defraud as that term is defined by statute. With respect to the charge based on defendant's delivery of the credit application (count III), the record shows that defendant sought out to lease a Mercedes Benz automobile from the Mercedes dealership on Golf Road in Hoffman Estates. As part of that process, he filled out a credit

application which required him to state, *inter alia*, his social security number, address, and employment information. On the application, defendant listed a social security number ending in 2282, Aeon Management as his employer, and 201 Lake Street in Oak Park as his address and gave it to Rodriguez. *People v. Lawson*, 2015 IL App (2d) 140604, ¶ 28 (if the forged document is delivered, then the intent to defraud will be presumed). After Rodriguez ran a credit check and discovered the consumer associated with the social security number provided by defendant had placed a freeze on the number, she told defendant about the issue and asked him to verify the social security number was correct. Defendant did so, never informing her what he had provided was a CPN and not a social security number. She also offered defendant the use of the dealership's phones and computers, he declined, telling her he would go to his home which was only a mile from the dealership and investigate.

¶ 45    However, during the booking process after his arrest, defendant provided his social security number, which ended in 9423, to Zaba and told Zaba he worked for Insanity Hair. Defendant also told Zaba he never worked for Aeon Management and obtained the company's information from the Internet. Further, the evidence showed that, while defendant may still have received mail at 201 Lake Street in Oak Park, he did not physically reside there. *Moore*, 2015 IL App (1st) 140051, ¶ 25 (intent is often proved by circumstantial evidence, such as the defendant's statements or conduct surrounding the act, as well as the act itself). As such, seemingly the only accurate information on defendant's application was his name. From this evidence, the trial court, as trier of fact, could rationally conclude defendant, acted with the intent to defraud when he delivered the application and attempted to secure a lease for the Mercedes.

¶ 46    With respect to the charge based on defendant's delivery of the social security card (count IV), the evidence established that, after defendant lifted the freeze, his credit application was forwarded to Mercedes-Benz Financial, which asked the dealership to obtain a copy of his social security card because the social security number defendant provided "was coming back linked to multiple users. Defendant emailed an image of what purported to be a social security card containing defendant's full name, "Michael Dewayne Fort," and contained a social security number ending in 2282. A funding specialist at Mercedes-Benz Financial found the card "questionable because the font did not look accurate or correct" and forwarded the matter to the Mercedes-Benz fraud division. After defendant was arrested, he told Zaba he received the image of the card when he purchased the CPN and knew it was not a valid social security card. From this evidence, the trial court could rationally conclude defendant, with the intent to defraud, knowingly delivered the social security card, which he knew was not a true and valid social security card, to the dealership, and knew it was capable of defrauding the dealership.

¶ 47    Defendant also argues the State failed to prove he acted knowingly. According to defendant, the State was required to prove that he "was aware of a substantial probability that the CPN he was using to the lease the Mercedes-Benz was either someone else's [social security number], or was a false number altogether, when he tendered it to the car dealership.

¶ 48    We initially note that contrary to defendant's argument, the State was not required to prove that he knew the CPN was someone else's social security number or a false number. The offense of forgery was based on defendant delivering or issuing the documents, *i.e.*, the credit application to the dealership (count III) and the social security card (count IV). As such, the State was required to prove that he knew the CPN was not his social security number and not that he knew it belonged

to someone else or that it was a false number. Thus, the question is whether defendant, acting with the intent to defraud, delivered the application and social security card bearing social security number ending in 2282, knowing those documents had been falsely made and were capable of defrauding another person. We find that he did.

¶ 49     Like intent, knowledge is rarely proved by direct evidence and must often be proved by circumstantial evidence. *Moore*, 2015 IL App (1st) 140051, ¶ 25. Section 4-5 of the Criminal Code of 2012 provides, in pertinent part, as follows:

> "A person knows or acts knowingly or with knowledge of *** the nature and attendant circumstances of his or her conduct, described by the statute defining the offense, when he or she is consciously aware that his or her conduct is of that nature or that those circumstances exist. Knowledge of a material fact includes awareness of the substantial probability that the fact exists." 720 ILCS 5/4-5(a) (West 2016).

¶ 50     Viewed in the light most favorable to the State, we find the State's evidence permitted an inference that defendant knew the documents contained false information and were capable of defrauding another. The record shows that defendant deliberately provided a number which he knew was not his social security number where the credit application asked for a social security number (count III). After Rodriguez informed him the social security number had a credit freeze on it, she specifically asked him to confirm the social security number he provided was correct, and defendant did so, never informing her what he had actually provided was a CPN. Defendant also emailed an image of what purported to be a social security card containing his full name, social security number ending in 2282 (count IV). Only after his arrest, did defendant provide his social security number to Zaba. He also explained to Zaba that he received the image of the card

when he purchased the CPN and knew it was not a valid social security card. From this evidence, the trial court, as trier of fact, could rationally conclude defendant, knew the application he filled out contained false material information and that defendant knew the social security card was not a valid card. See *People v. Caraga*, 2018 IL App (1st) 170123 (the defendant's conviction for forgery was supported by evidence showing that he necessarily knew a loan application included false information where the box specifying that the loan originator met with the home buyer face-to-face was checked, but the person who was listed as the loan originator never met with the buyer).

¶ 51    Defendant nevertheless argues that it was he who had been defrauded because "the CPN [he] had purchased from what purported to be a legitimate credit service turned out to be the actual SSN of another person." He points out that both Adams and Taylor were indicted and convicted of schemes to defraud stemming from their sale of CPNs to unsuspecting victims such as himself. However, while the fact that Adams and Taylor were committing fraud may negate defendant's guilt for the offense of identity theft (because the statute required the State to prove he knew the social security number he wrote on his credit application belonged to another person), it does not negate his guilt for forgery. See *Fort*, 2019 IL App (1st) 170644, ¶ 35. As mentioned, the offense of forgery did not require such a showing of knowledge. Rather, in order to establish that defendant committed forgery the State was required to prove, and did prove, that he knowingly delivered to the dealership the credit application and social security card, both of which he knew contained false information *i.e.* a CPN in lieu of a social security number.

¶ 52    That said, our decision to reverse defendant's attempt identity theft and identity theft convictions in his prior appeal does not preclude our finding that the State presented sufficient evidence to sustain his forgery convictions. In our prior opinion, we found only that the State failed

to prove defendant knew the social security number he provided to the dealership belonged to another person, which was an element of the offense of identity theft. *Fort*, 2019 IL App (1st) 170644, ¶ 35. As charged here, the offense of forgery did not require such a showing of knowledge. Rather, it required the State to prove defendant knowingly issued or delivered a false document knowing it was false.

¶ 53    In sum the State's evidence and the reasonable inferences therefrom was sufficient to prove defendant committed forgery. Stated differently, the evidence presented was not so improbable or unsatisfactory that it creates a reasonable doubt of defendant's guilt.

¶ 54    For the reasons stated, we affirm the trial court's judgment.

¶ 55    Affirmed.